[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS



**RECEIVED** KLH

APR 25 2023 ᴀᴍ

⌐ ᴍᴀ⌐ G. BRUTON
CLERK, U.S. DISTRICT COURT

_Michael Mayo_

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

1:23-cv-02599
Judge John J. Tharp, Jr
Magistrate Judge M. David Weisman
PC 7
DIRECT

vs.

_TOM Dart_
_Ramond Williams_
_Officer Parker_

Case No:_____
(To be supplied by the Clerk of this Court)

_____

_____

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**

__X__  COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code (state, county, or municipal defendants)

_____  COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code (federal defendants)

_____  OTHER (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**I.    Plaintiff(s):**

A.    Name: _Michael Cooper Mayo_

B.    List all aliases: _N/A_

C.    Prisoner identification number: _20181127027_

D.    Place of present confinement: _Cook County Jail_

E.    Address: _2700 South California Chicago, IL 60608_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

**II.    Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.    Defendant: _Tom Dart_

Title: _Cook County Sheriff_

Place of Employment: _Cook County Dept of Corrections_

B.    Defendant: _Ramond Williams_

Title: _Local 700 Teamster Union President_

Place of Employment: _Teamster Union_

C.    Defendant: _Officer Parker_

Title: _CCDOC Officer_

Place of Employment: _Cook County Jail_

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2                                                                    Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: *Mayo V. Dart, et al.* 21-cv-04653

B. Approximate date of filing lawsuit: 2021

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: *Michael Cooper Mayo*

D. List all defendants: *Larry Gavin, Karen Jones-Hayes, Damita Delitz, Brendon Lombardi, Director Miller, Officer Buchanan, THOMAS Dart, and LT. Bouge*

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): *Federal court (Northern District Eastern Division)*

F. Name of judge to whom case was assigned: *Hon. John J. Tharp Jr.*

G. Basic claim made: *Failure to Protect, Excessive Force and Retaliation*

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): *pending*

I. Approximate date of disposition: *pending*

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III.    **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.    Name of case and docket number: _May ov. Dart_
_21-CV-05014_

B.    Approximate date of filing lawsuit: _2021_

C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: _____
_Michael Cooper Mayo_

D.    List all defendants: _THOMAS DART_

E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _Federal court (Northern District Eastern Division)_

F.    Name of judge to whom case was assigned: _Hon. M. David_
_Weisman_

G.    Basic claim made: _COVID-19 Exposure_

H.    Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _pending_

I.    Approximate date of disposition: _pending_

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

3                                                      Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV.  **Statement of Claim:**

State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including names, dates, and places.  **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

I am a 46 year old disabled veteran. (Exhibt A) I am a pre-trial detainee waiting for trial. On Jan. 17, 2023 at about 12:20pm I was notified by officer Palmer that I had an in person visit. At this point I proceeded to walk off the deck(3F) with my cane. In the hallway I was greeted by officer Parker. I let officer Parker know that I had a wheelchair for long distance, he then replied, "who is going to push you because I am not." (Officer Palmer was a witness to this conversation) I did not respond to officer Parkers comment. At this point officer Parker walked to the nurses station to get a wheelchair. Upon his return he brought the wheelchair, but refused to push me. He then went inside 3F to make a call. After he finished his call he told me "you either push yourself or I am going to cancel your visit." Since I did not want to waste my families time

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I decided to try to endure the trip. Our in person
visits are held in division 10, which is a considerable
distance from division 8 where I am housed.
This trip also includes two vertical ramps that
must be traversed. During this trip I was
refused any help from officer Parker even
though I requested the assitance of a nurse.
It took us nearly 30 minutes to make it to
division 10. While trying to push myself in
the wheelchair, I had to deal with threats and
insults made by officer Parker. These threats
and verble insults started with officer Parker's
bolstering, "I told you I was not going to push you".
As we proceeded officer Parker told me that if
I did not hurry up he was going to write me a
ticket and cancel my visit for not following
his direct orders. I let officer Parker know
I had injuries to my back that were causing me
pain at the very moment. Officer Parkers reply
was "I don't give a fuck about your medical
condition." Officer Parker continued to walk
infront of me whistling and ignoring my obvious

5                                                    Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

need for assistance. Once I arrived at my visit I requested a white shirt because I was in so much pain it was going to be impossible to make the trip back by myself. At the conclusion of my visit LT. Pullums was there to assit me. LT. Pullums pushed me all the way back to division 8 and informed me this should have never been an issue and that officer Parker should have pushed me. When I returned to 3F officer Palmer told me she had called a white shirt in my absance because she felt officer Parkers actions were wrong and she wanted proper instructions on this situation. Sergeant Christie and Sgt. Lombardi answered officer Palmer's request. Sgt. Christie informed officer Palmer that indeed officer Parker should have assisted me by pushing me to my in person visit. This experience cause me extreme pain and mental anguish. I filed a grievance on this matter on Jan. 17, 2023. (Exhibt B) I filed an OPR complaint on March 2, 2023 (Exhibt C) I hold Ramond William (Local 700 Teamster Union President) liable for endorsing a policy

5

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV.    **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

among county employees to not assist
detainees in wheelchairs. I hold Tom Dart
liable for not properly training his staff.
on the Americans with Disabilities Act and
allowing the above mentioned policy
of not assisting detainees in wheelchairs
to fester among his staff. In support of
my claim see attached Exhibt D, "Americans
with Disabilities Act Disability Related
access for Inmates and Visitors Guide.
I also hold Tom Dart liable because he is responsible
for my health and safty while I am in his Custody.
The two vertial ramps leaving division 8 that
must be navigated are not handicap accessible
and create a harmful obstacle for the disabled.
Although, Dart is aware of this dangerous obstacle
he has done nothing to correct it.

4                                    Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## V. Relief:

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

I am seeking Compensatory, punitive and nominal damages. Also any awards the court finds proper and just.

VI. The plaintiff demands that the case be tried by a jury. ☒ YES ☐ NO

### CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this 19th day of April, 20 23

Michael Mayo
(Signature of plaintiff or plaintiffs)

Michael Mayo
(Print name)

20181127027
(I.D. Number)

2700 South California
Chicago, IL 60608
(Address)

Revised 9/2007
[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

# Exhibt A

Service Connected disability



**Department of Veterans Affairs**
6437 Garners Ferry Road
Columbia, SC 29209

February 22, 2023

In Reply Refer To: 319/NCC/CC
CSS XXXXX6521
Mayo M C

MICHAEL C MAYO
530 E 88TH ST
CHICAGO IL 60619

Dear Michael C Mayo,

This letter is a summary of benefits you currently receive from the Department of Veterans Affairs (VA). We are providing this letter to disabled Veterans to use in applying for benefits such as state or local property or vehicle tax relief, civil service preference, to obtain housing entitlements, free or reduced state park annual memberships, or any other program or entitlement in which verification of VA benefits is required. Please safeguard this important document. This letter is considered an official record of your VA entitlement.

Our records contain the following information:



**Personal Claim Information**
Your VA claim number is: XXXXXX521
You are the Veteran.

**Military Information**
The character(s) of discharge and service date(s) of the veteran include:
Honorable, Army, 01/20/1999-06/11/1999
(There may be additional periods of service not listed above)

**VA Benefits Information**
Service-connected disability: Yes
Your combined service-connected evaluation is: 70%
Your current monthly award amount is: $1,663.06
Are you entitled to a higher level of disability due to being unemployable: No
Are you considered to be totally and permanently disabled due to your service-connected disabilities: No
Are you service-connected for loss of or loss of use of a limb, or are you totally blind in or missing at least one eye: No
Have you received a Specially Adapted Housing (SAH) and/or Special Home Adaptation (SHA) grant: No

You should contact your state or local office of veterans' affairs for information on any tax, license, or fee-related benefits for which you may be eligible. State offices of veterans' affairs are available at http://www.va.gov/statedva.htm.

OSXQIO0600011100020003  023139

# Exhibit B

\* Jan 17, 2023 Grievance

The document appears to be an Inmate Grievance Form.



**COOK COUNTY SHERIFF'S OFFICE**
*(Oficina del Alguacil del Condado de Cook)*

**INMATE GRIEVANCE FORM**
*(Formulario de Queja del Preso)*

( 1 0-6 )

CONTROL #                    INMATE ID #

| ! THIS SECTION IS TO BE COMPLETED BY INMATE SERVICES STAFF ONLY ! | (! Para ser llenado solo por el personal de Inmate Services !) |
|---|---|

☐ Emergency Grievance
☐ Grievance
☐ Non-Compliant Grievance

☐ Cermak Health Services
☐ Superintendent: _____
☐ Other: _____

**PRINT - INMATE LAST NAME** *(Apellido del Preso):*
Mayo

**PRINT - FIRST NAME** *(Primer Nombre):*
Michael

**INMATE BOOKING NUMBER** *(# de identificación del Preso)*
20181127027

**DIVISION** *(División):*
8

**LIVING UNIT** *(Unidad):*
3F

**DATE** *(Fecha):*
Jan. 17, 2023

## GRIEVANCE GUIDELINES AND SUMMARY OF COMPLAINT

Your grieved issue must meet all criteria listed below in order to be assigned a control #, to be appealed and/or to exhaust remedies.

The grieved issue is not one of the following non-grievable matters: inmate classification including designation of an inmate as a security risk or protective custody inmate, or decisions of the inmate disciplinary hearings officer.

The grieved issue must have occurred within the last 15 calendar days unless the allegation is of sexual assault, sexual harassment, sexual abuse or voyeurism. If the grievance includes an allegation of sexual assault, sexual harassment, sexual abuse or voyeurism no time limits exist. If you believe an exception applies please see a CRW (Correctional Rehabilitation Worker.)

The grieved issue must not be a repeat submission of a grievance collected within the last 15 calendar days.

The grieved issue must not be a repeat submission of a grievance that previously received a response and was appealed.

The grieved issue must not be a repeat submission of a grievance that previously received a response and you chose not to appeal the response within 15 calendar days

The grieved issue must not contain offensive or harassing language.

The grievance form must not contain more than one issue.

The grievance issue must not pertain to non-jail related concerns such as with arresting agencies, judicial matters, or medical staff at outlying hospitals, etc.

## DIRECTRICES PARA AGRAVIOS Y RESUMEN DE QUEJA

El asunto de la queja tiene que satisfacer todo el criterio listado más abajo para obtener un número de control, para ser apelado y/o agotar todos los remedios posibles.

El asunto de la queja no puede ser ninguno de los siguientes temas, que no se consideran quejas formales: Clasificación del preso incluyendo designación del preso. Tal como riesgo de seguridad o custodia de protección para los presos, o decisiones del oficial de audiencias disciplinarias para los presos.

El asunto de la queja formal tiene que haber pasado en los últimos 15 días calendarias a menos que la acusación sea de acoso sexual, sexual hostigamiento, sexual abuso. O voyerismo. Si la queja incluye acusaciones de acoso sexual, hostigamiento, voyerismo, o abuso, no existe tiempo límite. Si usted cree que existe una excepción, hable o vea a un Trabajador de Rehabilitación Correccional (TRC/CRW).

El asunto de la queja no puede ser una repetición de una queja sometida en los últimos 15 días calendarios.

El asunto de la queja no puede ser una repetición de una queja previamente recibida y la cual ya ha recibido una respuesta y fue apelada.

El asunto de la queja no puede ser una repetición de una queja previamente reciba y la cual ya ha recibo una respuesta y usted recibida no someter una apelación sobre la decisión dada en los 15 días calendarios.

El asunto de la queja no puede contener lenguaje ofensivo o amenazante

La solicitud de la queja no puede contener más de un asunto.

El asunto de la queja no puede corresponder a asuntos no relacionados con la cárcel tal como preocupaciones sobre la agencia de arresto, asuntos judiciales, o empleados médicos de hospitales periféricos, etc.

| **REQUIRED -** DATE OF INCIDENT *(Fecha del Incidente)* | **REQUIRED -** TIME OF INCIDENT *(Horad del Incidente)* | **REQUIRED -** SPECIFIC LOCATION OF INCIDENT *(Lugar Específico del Incidente)* | **REQUIRED -** NAME and/or IDENTIFIER(S) OF ACCUSED *(Nombre y/o Identificación del Acusado)* |
|---|---|---|---|
| Jan 17, 2023 | 12:00 PM - 1:30 PM | Division 8 to Division 10 (in person visit) | Tom Dart Officer Parker |

I am a 46 year old disabled veteran - I am a pre-trial detainee awaiting trial. On Jan 17, 2023 at about 12:20 pm I was notified by officer Palmer (the officer for our dek) that I had a in person visit. at this point I proceed to walk off the dek (3F) with my cane - In the hallway I was greeted by officer Parker (the officer who was to escort me to my in person visit) - I let officer Parker know that I had a wheel chair for long distance, he then replied - "Who is going to push you because I am not." Officer Palmer was a

**NAME OF STAFF OR INMATE(S) HAVING INFORMATION REGARDING THIS COMPLAINT:** *(Nombre del personal o presos que tengan información:)*
Cameras Officer Palmer, Lt. Pullums, Officer Parker / Inmate Trabor

**INMATE SIGNATURE:** *(Firma del Preso):*
Michael Mayo

SUPERINTENDENT/DIRECTOR/DESIGNEE OF A DIVISION/UNIT MUST REVIEW AND SIGN ALL GRIEVANCES ALLEGING STAFF USE OF FORCE, STAFF MISCONDUCT, AND EMERGENCY GRIEVANCES. IF THE INMATE GRIEVANCE IS OF A SERIOUS NATURE, THE SUPERINTENDENT MUST INITIATE IMMEDIATE ACTION.

| **CRW/PLATOON COUNSELOR (Print):** | **SIGNATURE:** | **DATE CRW/PLATOON COUNSELOR RECIEVED:** |
|---|---|---|
| D. Wi | D GG | 1-18-22 |

| **SUPERINTENDENT/DIRECTOR/DESIGNEE (Print):** | **SIGNATURE:** | **DATE REVIEWED:** |
|---|---|---|
| | | |

**COOK COUNTY SHERIFF'S OFFICE**
*(Oficina del Alguacil del Condado de Cook)*

**INMATE GRIEVANCE FORM** (2 of 6)
*(Formulario de Queja del Preso)*

| CONTROL # | INMATE ID # |
|---|---|
| | |

! THIS SECTION IS TO BE COMPLETED BY INMATE SERVICES STAFF ONLY ! | (! Para ser llenado solo por el personal de Inmate Services !)

☐ Emergency Grievance
☐ Grievance
☐ Non-Compliant Grievance

☐ Cermak Health Services
☐ Superintendent: _____
☐ Other: _____

| PRINT - INMATE LAST NAME *(Apellido del Preso)*: Mayo | PRINT - FIRST NAME *(Primer Nombre)*: Michael | INMATE BOOKING NUMBER *(# de identificación del Preso)*: 20181127027 |
|---|---|---|
| DIVISION *(División)*: 8 | LIVING UNIT *(Unidad)*: 3F | DATE *(Fecha)*: Jan. 17, 2023 |

## GRIEVANCE GUIDELINES AND SUMMARY OF COMPLAINT

Your grieved issue must meet all criteria listed below in order to be assigned a control #, to be appealed and/or to exhaust remedies.

The grieved issue is not one of the following non-grievable matters: inmate classification including designation of an inmate as a security risk or protective custody inmate, or decisions of the inmate disciplinary hearings officer.

The grieved issue must have occurred within the last 15 calendar days unless the allegation is of sexual assault, sexual harassment, sexual abuse or voyeurism. If the grievance includes an allegation of sexual assault, sexual harassment, sexual abuse or voyeurism no time limits exist. If you believe an exception applies please see a CRW (Correctional Rehabilitation Worker.)

The grieved issue must not be a repeat submission of a grievance collected within the last 15 calendar days.

The grieved issue must not be a repeat submission of a grievance that previously received a response and was appealed.

The grieved issue must not be a repeat submission of a grievance that previously received a response and you chose not to appeal the response within 15 calendar days

The grieved issue must not contain offensive or harassing language.

The grievance form must not contain more than one issue.

The grievance issue must not pertain to non-jail related concerns such as with arresting agencies, judicial matters, or medical staff at outlying hospitals, etc.

## DIRECTRICES PARA AGRAVIOS Y RESUMEN DE QUEJA

El asunto de la queja tiene que satisfacer todo el criterio listado más abajo para obtener un número de control, para ser apelado y/o agotar todos los remedios posibles.

El asunto de la queja no puede ser ninguno de los siguientes temas, que no se consideran quejas formales: Clasificación del preso incluyendo designación del preso. Tal como riesgo de seguridad o custodia de protección para los presos, o decisiones del oficial de audiencias disciplinarias para los presos.

El asunto de la queja formal tiene que haber pasado en los últimos 15 días calendarias a menos que la acusación sea de acoso sexual, sexual hostigamiento, sexual abuso. O voyerismo. Si la queja incluye acusaciones de acoso sexual, hostigamiento, voyerismo, o abuso, no existe tiempo límite. Si usted cree que existe una excepción, hable o vea a un Trabajador de Rehabilitación Correccional (TRC/CRW).

El asunto de la queja no puede ser una repetición de una queja sometida en los últimos 15 días calendarios.

El asunto de la queja no puede ser una repetición de una queja previamente recibida y la cual ya ha recibido una respuesta y fue apelada.

El asunto de la queja no puede ser una repetición de una queja previamente reciba y la cual ya ha recibo una respuesta y usted recibirá no someter una apelación sobre la decisión dada en los 15 días calendarios.

El asunto de la queja no puede contener lenguaje ofensivo o amenazante

La solitud de la queja no puede contener más de un asunto.

El asunto de la queja no puede corresponder a asuntos no relacionados con la cárcel tal como preocupaciones sobre la agencia de arresto, asuntos judiciales, o empleados médicos de hospitales periféricos, etc.

| REQUIRED - DATE OF INCIDENT *(Fecha del Incidente)* | REQUIRED - TIME OF INCIDENT *(Horad del Incidente)* | REQUIRED - SPECIFIC LOCATION OF INCIDENT *(Lugar Específico del Incidente)* | REQUIRED - NAME and/or IDENTIFIER(S) OF ACCUSED *(Nombre y/o Identificación del Acusado)* |
|---|---|---|---|
| Jan. 17, 2023 | 12:00pm - 1:30pm | Division 8 to Division 10 (in person visit) | Tom Dart Officer Parker |

witness to this conversation) I did not respond to officer Parker comment. At this point officer Parker walked to the nurses station to get a wheelchair. Upon his return he brought the wheelchair but refused to push me. He then went inside 3F to make a call. After he finished his call he told me, "You either push your self or I am going to cancel your visit" Since I did not want to waite my families time I decided to try to endure the trip. Our in person visits are held in division 10, which is a considerable

| NAME OF STAFF OR INMATE(S) HAVING INFORMATION REGARDING THIS COMPLAINT: *(Nombre del personal o presos que tengan información:)* Officer Palmer, Cameras | INMATE SIGNATURE: *(Firma del Preso)*: Michael Mayo |
|---|---|
| Lt. Williams / Officer Parker / Inmate Trobor | |

SUPERINTENDENT/DIRECTOR/DESIGNEE OF A DIVISION/UNIT MUST REVIEW AND SIGN ALL GRIEVANCES ALLEGING STAFF USE OF FORCE, STAFF MISCONDUCT, AND EMERGENCY GRIEVANCES. IF THE INMATE GRIEVANCE IS OF A SERIOUS NATURE, THE SUPERINTENDENT MUST INITIATE IMMEDIATE ACTION.

| CRW/PLATOON COUNSELOR (Print): D.W. Son | SIGNATURE: | DATE CRW/PLATOON COUNSELOR RECIEVED: 1-18-23 |
|---|---|---|
| SUPERINTENDENT/DIRECTOR/DESIGNEE (Print): | SIGNATURE: | DATE REVIEWED: |

(FCN-73)(NOV 17)　　(WHITE COPY – INMATE SERVICES)　(YELLOW COPY – CRW/PLATOON COUNSELOR)　(PINK COPY – INMATE)



**COOK COUNTY SHERIFF'S OFFICE**
*(Oficina del Alguacil del Condado de Cook)*

**INMATE GRIEVANCE FORM** (3 of 6)
*(Formulario de Queja del Preso)*

| CONTROL # | INMATE ID # |
|---|---|

! THIS SECTION IS TO BE COMPLETED BY INMATE SERVICES STAFF ONLY !    (! Para ser llenado solo por el personal de Inmate Services !)

☐ Emergency Grievance
☐ Grievance
☐ Non-Compliant Grievance

☐ Cermak Health Services
☐ Superintendent: _____
☐ Other: _____

| PRINT - INMATE LAST NAME *(Apellido del Preso):* | PRINT - FIRST NAME *(Primer Nombre):* | INMATE BOOKING NUMBER *(# de identificación del Preso)* |
|---|---|---|
| Mayo | Michael | 2018112702 |

| DIVISION *(División):* | LIVING UNIT *(Unidad):* | DATE *(Fecha):* |
|---|---|---|
| 8 | 3F | Jan. 17, 2023 |

## GRIEVANCE GUIDELINES AND SUMMARY OF COMPLAINT

Your grieved issue must meet all criteria listed below in order to be assigned a control #, to be appealed and/or to exhaust remedies.

The grieved issue is not one of the following non-grievable matters: inmate classification including designation of an inmate as a security risk or protective custody inmate, or decisions of the inmate disciplinary hearings officer.

The grieved issue must have occurred within the last 15 calendar days unless the allegation is of sexual assault, sexual harassment, sexual abuse or voyeurism. If the grievance includes an allegation of sexual assault, sexual harassment, sexual abuse or voyeurism no time limits exist. If you believe an exception applies please see a CRW (Correctional Rehabilitation Worker.)

The grieved issue must not be a repeat submission of a grievance collected within the last 15 calendar days.

The grieved issue must not be a repeat submission of a grievance that previously received a response and was appealed.

The grieved issue must not be a repeat submission of a grievance that previously received a response and you chose not to appeal the response within 15 calendar days

The grieved issue must not contain more than one issue.

The grievance form must not contain offensive or harassing language.

The grievance issue must not pertain to non-jail related concerns such as with arresting agencies, judicial matters, or medical staff at outlying hospitals, etc.

## DIRECTRICES PARA AGRAVIOS Y RESUMEN DE QUEJA

El asunto de la queja tiene que satisfacer todo el criterio listado más abajo para obtener un número de control, para ser apelado y/o agotar todos los remedios posibles.

El asunto de la queja no puede ser ninguno de los siguientes temas, que no se consideran quejas formales: Clasificación del preso incluyendo designación del preso. Tal como riesgo de seguridad o custodia de protección para los presos, o decisiones del oficial de audiencias disciplinarias para los presos.

El asunto de la queja formal tiene que haber pasado en los 15 días calendarias a menos que se acusación sea de acoso sexual, sexual hostigamiento, sexual abuso. O voyerismo. Si la queja incluye acusaciones de acoso sexual, hostigamiento, voyerismo, o abuso, no existe tiempo límite. Si usted cree que existe una excepción, hable o vea a un Trabajador de Rehabilitación Correccional (TRC/CRW).

El asunto de la queja no puede ser una repetición de una queja sometida en los últimos 15 días calendarios.

El asunto de la queja no puede ser una repetición de una queja previamente recibida y la cual ya ha recibido una respuesta y fue apelada.

El asunto de la queja no puede ser una repetición de una queja previamente reciba y la cual ya ha recibo una respuesta y usted recibida no someter una apelación sobre la decisión dada en los 15 días calendarios.

El asunto de la queja no puede contener lenguaje ofensivo o amenazante

La solitud de la queja no puede contener más de un asunto.

El asunto de la queja no puede corresponder a asuntos no relacionados con la cárcel tal como preocupaciones sobre la agencia de arresto, asuntos judiciales, o empleados médicos de hospitales periféricos, etc.

| REQUIRED - DATE OF INCIDENT *(Fecha del Incidente)* | REQUIRED - TIME OF INCIDENT *(Hora del Incidente)* | REQUIRED - SPECIFIC LOCATION OF INCIDENT *(Lugar Específico del Incidente)* | REQUIRED - NAME and/or IDENTIFIER(S) OF ACCUSED *(Nombre y/o Identificación del Acusado)* |
|---|---|---|---|
| Jan. 17, 2023 | 12:00 pm – 1:30 pm | Division 8 to Division 10 (in person visit) | Tom Dart, Officer Parker |

distance from division 8 where I am housed. This trip also includes two vertical ramps that must be traversed. During this trip I was refused any help from officer Parker even though I requested the assistance of a nurse. It took us nearly 30 minutes to make it to division 10. While trying to push myself in the wheelchair I had to deal with treats and insults made by officer Parker. These threats and verble insults started with officer Parker's bolstering, I told you I was not going to push you!

| NAME OF STAFF OR INMATE(S) HAVING INFORMATION REGARDING THIS COMPLAINT: *(Nombre del personal o presos que tengan información):* Cameras Officer Palmer Lt. Pullums / Officer Parker / Inmate Trabol | INMATE SIGNATURE: *(Firma del Preso):* Michael Mayo |
|---|---|

SUPERINTENDENT/DIRECTOR/DESIGNEE OF A DIVISION/UNIT MUST REVIEW AND SIGN ALL GRIEVANCES ALLEGING STAFF USE OF FORCE, STAFF MISCONDUCT, AND EMERGENCY GRIEVANCES. IF THE INMATE GRIEVANCE IS OF A SERIOUS NATURE, THE SUPERINTENDENT MUST INITIATE IMMEDIATE ACTION.

| CRW/PLATOON COUNSELOR *(Print):* D Wilson | SIGNATURE: D Wilson | DATE CRW/PLATOON COUNSELOR RECIEVED: 1-18-23 |
|---|---|---|
| SUPERINTENDENT/DIRECTOR/DESIGNEE *(Print):* | SIGNATURE: | DATE REVIEWED: |

(FCN-73)(NOV 17)    (WHITE COPY – INMATE SERVICES)    (YELLOW COPY – CRW/PLATOON COUNSELOR)    (PINK COPY – INMATE)



**COOK COUNTY SHERIFF'S OFFICE**
*(Oficina del Alguacil del Condado de Cook)*

**INMATE GRIEVANCE FORM** (456)

*(Formulario de Queja del Preso)*

| CONTROL # | INMATE ID # |
|---|---|
| | |

| ! THIS SECTION IS TO BE COMPLETED BY INMATE SERVICES STAFF ONLY ! | *(¡ Para ser llenado solo por el personal de Inmate Services !)* |
|---|---|
| ☐ Emergency Grievance | ☐ Cermak Health Services |
| ☐ Grievance | ☐ Superintendent: _____ |
| ☐ Non-Compliant Grievance | ☐ Other: _____ |

| PRINT - INMATE LAST NAME *(Apellido del Preso)*: | PRINT - FIRST NAME *(Primer Nombre)*: | INMATE BOOKING NUMBER *(# de identificación del Preso)* |
|---|---|---|
| Mayo | Michael | 20181127027 |

| DIVISION *(División)*: | LIVING UNIT *(Unidad)*: | DATE *(Fecha)*: |
|---|---|---|
| 8 | 31 | Jan. 17, 2023 |

## GRIEVANCE GUIDELINES AND SUMMARY OF COMPLAINT

Your grieved issue must meet all criteria listed below in order to be assigned a control #, to be appealed and/or to exhaust remedies.

The grieved issue is not one of the following non-grievable matters: inmate classification including designation of an inmate as a security risk or protective custody inmate, or decisions of the inmate disciplinary hearings officer.

The grieved issue must have occurred within the last 15 calendar days unless the allegation is of sexual assault, sexual harassment, sexual abuse or voyeurism. If the grievance includes an allegation of sexual assault, sexual harassment, sexual abuse or voyeurism no time limits exist. If you believe an exception applies please see a CRW (Correctional Rehabilitation Worker.)

The grieved issue must not be a repeat submission of a grievance collected within the last 15 calendar days.

The grieved issue must not be a repeat submission of a grievance that previously received a response and was appealed.

The grieved issue must not be a repeat submission of a grievance that previously received a response and you chose not to appeal the response within 15 calendar days

The grieved issue must not contain offensive or harassing language.

The grievance form must not contain more than one issue.

The grievance issue must not pertain to non-jail related concerns such as with arresting agencies, judicial matters, or medical staff at outlying hospitals, etc.

## DIRECTRICES PARA AGRAVIOS Y RESUMEN DE QUEJA

El asunto de la queja tiene que satisfacer todo el criterio listado más abajo para obtener un número de control, para ser apelado y/o agotar todos los remedios posibles.

El asunto de la queja no puede ser ninguno de los siguientes temas, que no se consideran quejas formales: Clasificación del preso incluyendo designación del preso. Tal como riesgo de seguridad o custodia de protección para los presos, o decisiones del oficial de audiencias disciplinarias para los presos.

El asunto de la queja formal tiene que haber pasado en los últimos 15 días calendaria a menos que la acusación sea de acoso sexual, sexual hostigamiento, sexual abuso. O voyerismo. Si la queja incluye acusaciones de acoso sexual, hostigamiento, voyerismo, o abuso, no existe tiempo límite. Si usted cree que existe una excepción, hable o vea a un Trabajador de Rehabilitación Correccional (TRC/CRW).

El asunto de la queja no puede ser una repetición de una queja sometida en los últimos 15 días calendarios.

El asunto de la queja no puede ser una repetición de una queja previamente recibida y la cual ya ha recibido una respuesta y fue apelada.

El asunto de la queja no puede ser una repetición de una queja previamente reciba y la cual ya ha recibo una respuesta y usted recibida no someter una apelación sobre la decisión dada en los 15 días calendarios.

El asunto de la queja no puede contener lenguaje ofensivo o amenazante

La solitud de la queja no puede contener más de un asunto.

El asunto de la queja no puede corresponder a asuntos no relacionados con la cárcel tal como preocupaciones sobre la agencia de arresto, asuntos judiciales, o empleados médicos de hospitales periféricos, etc.

| REQUIRED -<br>DATE OF INCIDENT<br>*(Fecha del Incidente)*<br>Jan. 17, 2023 | REQUIRED -<br>TIME OF INCIDENT<br>*(Horad del Incidente)*<br>12:00 pm -<br>1:30 pm | REQUIRED -<br>SPECIFIC LOCATION OF INCIDENT<br>*(Lugar Específico del Incidente)*<br>Division 8 to Division 10<br>(in person visit) | REQUIRED -<br>NAME and/or IDENTIFIER(S) OF ACCUSED<br>*(Nombre y/o Identificación del Acusado)*<br>Tom Dart<br>Officer Parker |
|---|---|---|---|

As we proceeded officer Parker told me that i'll did not hurry up he was going to write me a ticket, a cancel my visit for not following his direct orders. I let officer Parker know I had injuries to my back that were causing me pain at the very moment. Officer Parkers reply was "I don't give a fuck about your medical condition" Office Parker continued to walk in front of me whistling and ignoring my obvious need for assistance. Once I arrived at my visit I requested a white

| NAME OF STAFF OR INMATE(S) HAVING INFORMATION REGARDING THIS COMPLAINT:<br>*(Nombre del personal o presos que tengan información:)* Officer Palmer Cameras<br>C.T. Pullums Officer Parker / Inmate Trabor | INMATE SIGNATURE: *(Firma del Preso)*:<br>Michael Mayo |
|---|---|

| SUPERINTENDENT/DIRECTOR/DESIGNEE OF A DIVISION/UNIT MUST REVIEW AND SIGN ALL GRIEVANCES ALLEGING STAFF USE OF FORCE, STAFF MISCONDUCT, AND EMERGENCY GRIEVANCES. IF THE INMATE GRIEVANCE IS OF A SERIOUS NATURE, THE SUPERINTENDENT MUST INITIATE IMMEDIATE ACTION. |||
|---|---|---|
| CRW/PLATOON COUNSELOR (Print):<br>S. Wilson | SIGNATURE:<br>D Wilson | DATE CRW/PLATOON COUNSELOR RECIEVED:<br>1-18-23 |
| SUPERINTENDENT/DIRECTOR/DESIGNEE (Print): | SIGNATURE: | DATE REVIEWED: |

(FCN-73)**(NOV 17)**  (**WHITE COPY** – INMATE SERVICES)  (**YELLOW COPY** – CRW/PLATOON COUNSELOR)  (**PINK COPY** – INMATE)

**COOK COUNTY SHERIFF'S OFFICE**
*(Oficina del Alguacil del Condado de Cook)*

**INMATE GRIEVANCE FORM** (5 of 6)
*(Formulario de Queja del Preso)*

CONTROL # | INMATE ID #

! THIS SECTION IS TO BE COMPLETED BY INMATE SERVICES STAFF ONLY ! *(! Para ser llenado solo por el personal de Inmate Services !)*

☐ Emergency Grievance
☐ Grievance
☐ Non-Compliant Grievance

☐ Cermak Health Services
☐ Superintendent: _____
☐ Other: _____

PRINT - INMATE **LAST NAME** *(Apellido del Preso):* Mayo

PRINT - **FIRST NAME** *(Primer Nombre):* Michael

INMATE BOOKING NUMBER *(# de identificación del Preso)* 20181127027

DIVISION *(División):* 8

LIVING UNIT *(Unidad):* 3F

DATE *(Fecha):* Jan 17, 2023

## GRIEVANCE GUIDELINES AND SUMMARY OF COMPLAINT

Your grieved issue must meet all criteria listed below in order to be assigned a control #, to be appealed and/or to exhaust remedies.
The grieved issue is not one of the following non-grievable matters: inmate classification including designation of an inmate as a security risk or protective custody inmate, or decisions of the inmate disciplinary hearings officer.
The grieved issue must have occurred within the last 15 calendar days unless the allegation is of sexual assault, sexual harassment, sexual abuse or voyeurism. If the grievance includes an allegation of sexual assault, sexual harassment, sexual abuse or voyeurism no time limits exist. If you believe an exception applies please see a CRW (Correctional Rehabilitation Worker.)
The grieved issue must not be a repeat submission of a grievance collected within the last 15 calendar days.
The grieved issue must not be a repeat submission of a grievance that previously received a response and was appealed.
The grieved issue must not be a repeat submission of a grievance that previously received a response and you chose not to appeal the response within 15 calendar days
The grieved issue must not contain offensive or harassing language.
The grievance form must not contain more than one issue.
The grievance issue must not pertain to non-jail related concerns such as with arresting agencies, judicial matters, or medical staff at outlying hospitals, etc.

## DIRECTRICES PARA AGRAVIOS Y RESUMEN DE QUEJA

El asunto de la queja tiene que satisfacer todo el criterio listado más abajo para obtener un número de control, para ser apelado y/o agotar todos los remedios posibles.
El asunto de la queja no puede ser ninguno de los siguientes temas, que no se consideran quejas formales: Clasificación del preso incluyendo designación del preso. Tal como riesgo de seguridad o custodia de protección para los presos, o decisiones del oficial de audiencias disciplinarias para los presos.
El asunto de la queja formal tiene que haber pasado en los últimos 15 días calendarias a menos que la acusación sea de acoso sexual, sexual hostigamiento, sexual abuso. O voyerismo. Si la queja incluye acusaciones de acoso sexual, hostigamiento, voyerismo, o abuso, no existe tiempo límite. Si usted cree que existe una excepción, hable o vea a un Trabajador de Rehabilitación Correccional (TRC/CRW).
El asunto de la queja no puede ser una repetición de una queja sometida en los últimos 15 días calendarios.
El asunto de la queja no puede ser una repetición de una queja previamente recibida y la cual ya ha recibido una respuesta y fue apelada.
El asunto de la queja no puede ser una repetición de una queja previamente reciba y la cual ya ha recibo una respuesta y usted recibida no someter una apelación sobre la decisión dada en los 15 días calendarios.
El asunto de la queja no puede contener lenguaje ofensivo o amenazante
La solitud de la queja no puede contener más de un asunto.
El asunto de la queja no puede corresponder a asuntos no relacionados con la cárcel tal como preocupaciones sobre la agencia de arresto, asuntos judiciales, o empleados médicos de hospitales periféricos, etc.

| REQUIRED - DATE OF INCIDENT *(Fecha del Incidente)* | REQUIRED - TIME OF INCIDENT *(Horad del Incidente)* | REQUIRED - SPECIFIC LOCATION OF INCIDENT *(Lugar Específico del Incidente)* | REQUIRED - NAME and/or IDENTIFIER(S) OF ACCUSED *(Nombre y/o Identificación del Acusado)* |
|---|---|---|---|
| Jan 17, 2023 | 12:00 pm  1:30 pm | Division 8 to Division 10 (in person Visit) | Tom Dact  Officer Parker |

shirt because I was in so much pain it was going to be
impossible to make the trip back by myself. At the conclusion
of my visit (T. Pullums was there to assist me. (T. Pullums
pushed me all the way back to division, 8 and informed me
this should never have been an issue and that officer Parker
should have pushed me. (When I returned to 3F officer
Palmer told me she had called a white shirt in my absence
because she felt officer Parkers actions were wrong, and she

NAME OF STAFF OR INMATE(S) HAVING INFORMATION REGARDING THIS COMPLAINT: *(Nombre del personal o presos que tengan información:)* Officer Palmer Cameras

INMATE SIGNATURE: *(Firma del Preso):* Michael Mayo

L.T. Pullums / Officer Parker / Inmate Trabor

SUPERINTENDENT/DIRECTOR/DESIGNEE OF A DIVISION/UNIT MUST REVIEW AND SIGN ALL GRIEVANCES ALLEGING STAFF USE OF FORCE, STAFF MISCONDUCT, AND EMERGENCY GRIEVANCES. IF THE INMATE GRIEVANCE IS OF A SERIOUS NATURE, THE SUPERINTENDENT MUST INITIATE IMMEDIATE ACTION.

| CRW/PLATOON COUNSELOR (Print): | SIGNATURE: | DATE CRW/PLATOON COUNSELOR RECIEVED: |
|---|---|---|
| | D. C. | 1-18-23 |
| SUPERINTENDENT/DIRECTOR/DESIGNEE (Print): | SIGNATURE: | DATE REVIEWED: |
| | | |

(FCN-73)(NOV 17)  **(WHITE COPY** – INMATE SERVICES)  **(YELLOW COPY** – CRW/PLATOON COUNSELOR)  **(PINK COPY** – INMATE)

**COOK COUNTY SHERIFF'S OFFICE**
*(Oficina del Alguacil del Condado de Cook)*
**INDIVIDUAL IN CUSTODY GRIEVANCE FORM** (6056)
*(Formulario de Queja del Individuo bajo Custodi)*

CONTROL #

Individual in Custody SHORT #

| ! THIS SECTION IS TO BE COMPLETED BY IIC SERVICES STAFF | (! Para ser llenado solo por el personal de IIC Services !) |
|---|---|
| ☐ Emergency Grievance <br> ☐ Grievance <br> ☐ Non-Compliant Grievance | ☐ Cermak Health Services <br> ☐ Superintendent:_____ <br> ☐ Other: _____ |

| PRINT - INDIVIDUAL IN CUSTODY LAST NAME *(Imprimir - Apellido del individuo):* | PRINT - FIRST NAME *(Imprimir – Primer nombre del individuo):* | BOOKING NUMBER *(# de identificación)* |
|---|---|---|
| Mayo | Michael | 20181127C27 |

| DIVISION *(División):* | LIVING UNIT *(Unidad):* | DATE *(Fecha):* |
|---|---|---|
| 8 | 3F | Jan. 17, '23 |

## GRIEVANCE GUIDELINES AND SUMMARY OF COMPLAINT

Your grieved issue must meet all criteria listed below in order to be assigned a control #, to be appealed and/or to exhaust remedies. The grieved issue is not one of the following non-grievable matters: Classification, including designation of an individual as a security risk or protective custody individual, or decisions of the disciplinary hearings officer.

The grieved issue must have occurred within the last 15 calendar days unless the allegation is of sexual assault, sexual harassment, sexual abuse or voyeurism. If the grievance includes an allegation of sexual assault, sexual harassment, sexual abuse or voyeurism no time limits exist. If you believe an exception applies please see a CRW (Correctional Rehabilitation Worker).

The grieved issue must not be a repeat submission of a grievance collected within the last 15 calendar days.
The grieved issue must not be a repeat submission of a grievance that previously received a response and was appealed.
The grieved issue must not be a repeat submission of a grievance that previously received a response and you chose not to appeal the response within 15 calendar days
The grieved issue must not contain offensive or harassing language.
The grievance form must not contain more than one issue.
The grievance issue must not pertain to non-jail related concerns such as with arresting agencies, judicial matters, or medical staff at outlying hospitals, etc.

### Directrices de quejas y resumen de quejas

El asunto de la queja tiene que satisfacer todo el criterio listado más abajo para obtener un número de control, para ser apelado y/o agotar todos los remedios posibles.
El asunto de la queja no puede ser ninguno de los siguientes temas, que no se consideran quejas formales: Clasificación del preso incluyendo designación del preso. Tal como riesgo de seguridad o custodia de protección para los presos, o decisiones del oficial de audiencias disciplinarias para los individuo.
El asunto de la queja debe haber ocurrido dentro de los 15 días calendarios a menos que la acusación sea de asalto sexual, acoso sexual, abuso sexual o voyerismo. Si la queja incluye acusaciones de asalto sexual, acoso sexual, abuso sexual o voyerismo no existe tiempo de límite. Si usted cree que existe una excepción, consulte con un Trabajador de Rehabilitación Correccional (TRC/CRW).
El asunto de la queja no puede ser una repetición de una queja sometida en los últimos 15 días calendarios.
El asunto de la queja no puede ser una repetición de una queja previamente recibida y la cual ya ha recibido una respuesta y fue apelada.
El asunto de la queja no puede ser una repetición de una queja previamente reciba y la cual ya ha recibo una respuesta y usted recibida no someter una apelación sobre la decisión dada en los 15 días calendarios.
El asunto de la queja no puede contener lenguaje ofensivo o amenazante
La solitud de la queja no puede contener más de un asunto.
El asunto de la queja corresponde asuntos no relacionados con la cárcel, como las agencias de arresto, los asuntos judiciales o el personal médico en los hospitales periféricos, etc.

| REQUIRED - <br> DATE OF INCIDENT <br> *(Fecha del Incidente)* | REQUIRED - <br> TIME OF INCIDENT <br> *(Hora del Incidente)* | REQUIRED - <br> SPECIFIC LOCATION OF INCIDENT <br> *(Lugar Específico del Incidente)* | REQUIRED - <br> NAME and/or IDENTIFIER(S) OF ACCUSED <br> *(Nombre y/o Identificación del Acusado)* |
|---|---|---|---|
| Jan. 17, 2023 | 1:00 p.m <br> 1:30 p.m | Division 8 to Division 10 <br> (In person Visit) | Tom Dart <br> Officer Parker |

wanted proper instructions on this situation. Sergeant Christie and Sgt. Zomba-li answered officer Palmer's request. Sgt. Christie informed officer Palmer that indeed officer Parker should have assisted me by pushing me to my in person Visit. No one should to endure what I did today. I am now in extreme back pain and my legs are very sore because the wheelchair did not have leg support and I had to hold my legs up the whole time. (Two other inmates took the trip with me, they can support my claim)

| NAME OF STAFF OR INDIVIDUAL IN CUSTODY HAVING INFORMATION REGARDING THIS COMPLAINT: <br> *(Nombre del personal o individuo que tengan información:)* Officer Palmer Cameras <br> Lt. Pullums/Officer Parker/Inmate Trabor | SIGNATURE of Individual in Custody: *(Individuo bajo costodia):* <br> Michael Mayo |
|---|---|

SUPERINTENDENT/DIRECTOR/DESIGNEE OF A DIVISION/UNIT MUST REVIEW AND SIGN ALL GRIEVANCES ALLEGING STAFF USE OF FORCE, STAFF MISCONDUCT, AND EMERGENCY GRIEVANCES. IF THE I.I.C. GRIEVANCE IS OF A SERIOUS NATURE, THE SUPERINTENDENT MUST INITIATE IMMEDIATE ACTION.

| CRW NAME (Print): <br> D. WILSON | SIGNATURE: | DATE CRW RECIEVED: <br> 1-18-23 |
|---|---|---|
| SUPERINTENDENT/DIRECTOR/DESIGNEE (Print): | SIGNATURE: | DATE REVIEWED: |

(FCN-58)(MAR 22)    (WHITE COPY – IIC SERVICES DEPT.)    (YELLOW COPY – CRW)    (PINK COPY – INDIVIDUAL IN CUSTODY)

**COOK COUNTY SHERIFF'S OFFICE**
*(Oficina Del Alguacil del Condado de Cook)*

**INDIVIDUAL IN CUSTODY GRIEVANCE RESPONSE/APPEAL FORM**
*(Individuo bajo custodia - formulario de respuesta/apelación de queja)*

| CONTROL NUMBER | | Individual In Custody SHORT # |
|---|---|---|
| 2023 X 00770 | | 794313 |
| PRINT CRW LAST NAME | Wilson | |

### INFORMATION TO BE COMPLETED BY IIC SERVICES PERSONNEL ONLY

| Individual In Custody LAST NAME: | Individual In Custody FIRST NAME: | BOOKING ID # |
|---|---|---|
| Mayo | Micheal | 2018112702? |

GRIEVANCE ISSUE AS DETERMINED BY CRW: 330 Security Procedures

IMMEDIATE CRW RESPONSE (If applicable): IIC grieving the movement otc transportation (Div 10)

CRW/ REFERRED THIS GRIEVANCE TO (Example: Superintendent, Cermak Health Services): _____ DOC Admin (7)     DATE REFERRED: 1/18/23

### RESPONSE BY PERSONNEL HANDLING REFERRAL

To file an official complaint against a sworn member, please include
This matter has been shared with visitation staff. To file an official
complaint against a specific sworn member, please include the involved sworn
member, incident details, and other specifics.

| PERSONNEL RESPONDING TO GRIEVANCE (! Print !): | SIGNATURE: | DIV./DEPT. | DATE: |
|---|---|---|---|
| A Howard | A Howard | Doc Programs | 3/23/2023 |

### THIS SECTION IS TO BE COMPLETED BY INDIVIDUAL IN CUSTODY (Esta sección debe ser completada por el individuo.)

| INDIVIDUAL IN CUSTODY SIGNATURE (Firma del Individuo bajo custodia): | DATE RESPONSE WAS RECEIVED: (Fecha en que la respuesta fue recibida) |
|---|---|
| Michael Mayo | Mar, 29, 2023 |

### INDIVIDUAL IN CUSTODY 'S REQUEST FOR AN APPEAL ( Solicitud de apelación del individuo )

- To exhaust administrative remedies, a grievance appeal must be made on this form and within 15 calendar days of the date the individual received the above notated response. An appeal must be filed in ALL circumstances in order to exhaust administrative remedies, regardless if the grieved issue(s) have been referred for further review and/or investigation. Any pending O.P.R. review or investigation, is NOT part of the grievance appeal process.
*Para agotar los recursos administrativos, las apelaciones de quejas se deben realizar en este formulario y dentro de los 15 días calendarios a partir de la fecha en que el individuo recibió la respuesta anotada anteriormente. Se debe presentar una apelación en TODAS las circunstancias a fin de agotar los recursos administrativos, independientemente si los asuntos de la queja han sido referidos para una revisión y/o investigación. Cualquier revisión o investigación pendiente de OPR NO es parte del proceso de apelación de quejas.)*

INDIVIDUAL IN CUSTODY BASIS FOR AN APPEAL: (Base de apelación del individuo.)
DATE OF APPEAL REQUEST: (Fecha de la solicitud de la apelación.) March, 29, 2023

A complaint was notarized and mailed to the Office of
Professional Review on March 2, 2023. Waiting for
an answer from OPR.

| DIRECTOR'S/DESIGNEE'S ACCEPTANCE OF BASIS/REQUEST OF APPEAL? | Yes | No |
|---|---|---|

*(Aceptación del Director/Designado de la solicitud de apelación del individuo.)*

IIC SERVICES DIRECTOR/DESIGNEE'S DECISION OR RECOMMENDATION: *(Decisión o recomendación por parte del Director de Servicios de IIC / Designado.)*

Original Response to Stand

| IIC SERVICES DIRECTOR/DESIGNEE (Director de Servicios de IIC / Designado): | SIGNATURE (Firma): | DATE (Fecha): |
|---|---|---|
| M Miller | | 4/7/23 |

*Appeal response and/or decision returned to IIC via inter-departmental mail, U.S. Mail or CRW delivery.*
*(Su respuesta de apelación y/o decisión será entregada al IIC por Correo interno del departamento, Correo de EE. UU. o del Trabajador Social (CRW).)*

DATE APPEAL RESPONSE/DECISION WAS FORWARDED:
*(Fecha en que se envió la respuesta/decisión de apelación.)*
APR 10 2023

(FCN-89)(AUG 22)     (WHITE COPY – IIC SERVICES)     (YELLOW COPY – CRW)     (PINK COPY – INDIVIDUAL IN CUSTODY)



Exhibit C

\* March 2, 2023  OPR Complaint



# SHERIFF'S OFFICE OF COOK COUNTY
## OFFICE OF PROFESSIONAL REVIEW
### COMPLAINT REGISTER

**Complainant Information**

NAME (Last, First, M.I.): ~~Michael~~ Mayo, Michael C.    AGE: 46    DATE OF BIRTH: 12-20-1976    HOME #: 773-651-9252

HOME ADDRESS: 530 East 88th Street    CITY: Chicago    WORK/OTHER #: N/A

STATE: IL    ZIP CODE: 60619    STATE I.D./D.L. #: M000-5437-6361    STATE OF ISSUANCE: IL

I HAVE BEEN NOTIFIED THAT, PURSUANT TO 50 ILCS 725/3.8(b), ANYONE FILING A COMPLAINT AGAINST A SWORN PEACE OFFICER MUST HAVE THE COMPLAINT SUPPORTED BY A SWORN AFFIDAVIT.

**Complaint Information**

DATE OF INCIDENT: Jan. 17, 2023    TIME OF INCIDENT: 12:00 pm - 1:30 pm

LOCATION OF INCIDENT: Division 8 to Division 10

PROVIDE NAMES, BADGE NUMBERS, SQUAD NUMBER or LICENSE PLATE, and/or PHYSICAL DESCRIPTION OF THE OFFICER AGAINST WHOM YOU WISH TO FILE A COMPLAINT:

Officer Parker (Black male)

**Witnesses**

ARE THERE ANY WITNESSES YOU WISH TO BE CONTACTED DURING THE INVESTIGATION? ☒ YES   ☐ NO
IF YES, PROVIDE CONTACT INFORMATION.

| NAME | ADDRESS/CITY/STATE/ZIP | HOME PHONE # |
|---|---|---|
| Officer Palmer | 2700 South California Chicago | (Jail) |
| LT. Pullums | 2700 South California Chicago | (Jail) |

**Narrative**

PROVIDE A FULL DETAILED ACCOUNT OF YOUR COMPLAINT AND THE NATURE OF THE INCIDENT.

I am 46 years old and a disabled veteran. I am a pre-trial detainee awaiting trial. On Jan. 17, 2023 at about 12:20 pm I was notified by officer Palmer that I had an in person visit. At this point I proceeded to walk off the deck (3E) with my cane. In the hallway I was greeted by officer Parker. I let officer Parker know that I had a wheelchair for long distance, he then replied, "who is going to push you because I am not." (Officer Palmer was a witness to this conversation) I did not respond to officer Parkers comment. At this point officer Parker walked to the nurses station to get a wheelchair. Upon his return he brought the wheelchair but refused to push me. He then went inside ☒ CONTINUED ON REVERSE

FOR OFFICE USE ONLY
DATE COMPLAINT RECEIVED: _____ RECEIVED BY: _____

IAD/IG #: _____

**Complaint Narrative (Continued)**

3F to make a call. After he finished his call he told me, "you either push yourself or I am going to cancel your visit." Since I did not want to waste my families time I decided to try to endure the trip. Our in person visits are held in division 10, which is a considerable distance from division 8 where I am housed. This trip also includes two vertical ramps that must be traversed. During this trip also I was refused any help from officer Parker even though I requested the assitance of a nurse. It took us nearly 30 mins. to make it to division 10. While trying to push myself in the wheelchair I had to deal with treats and insults made by officer Parker. These treats and verble insults started with officer Parker bolstering "I told you I was not going to push you." As we proceeded officer Parker told me that if I did not hurry up he was going to write me a ticket and cancel my visit for not following his direct orders. I let officer Parker know I had injuries to my back that were causing me pain at the very moment. Officer Parkers reply was, "I don't give a fuck about your medical condition." Officer Parker continued to walk infront of me whistling and ignoring my obvious need for assistance. At the conclusion of my visit LT. Pullums pushed me back to division 8 and told me that officer Parker was wrong for the way he treated me. no one should be treated this way. Please investigate so this never happens again.

PLEASE BE AWARE THAT IF YOU ALLEGE INJURIES AS A RESULT OF THIS INCIDENT, DUE TO FEDERAL PRIVACY LAWS ON THE RELEASE OF MEDICAL RECORDS, YOU MUST PROVIDE COPIES OF YOUR RELEVANT MEDICAL RECORDS REGARDING ANY EXAMINATION OR TREATMENT TO THE SHERIFF'S OFFICE INVESTIGATING UNIT TO BE MADE PART OF THE INVESTIGATION.

I have read this statement that I have voluntarily made, consisting of __2__ pages, and I solemnly swear that the facts and allegations contained within are true and correct to the best of my knowledge. __Michael Mayo__
(Print Name)

Complainant's Signature: _Michael Mayo_      Date: __Mar. 2, 2023__

State of Illinois )
County of Cook )

Signed and sworn to before me on __3/2/2023__ by __Michael Mayo__
(date)                    (name of person making statement)

OFFICIAL SEAL
V DOERR (notary seal)
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 7/7/2025

_M. Doerr_
(signature of notary public)

A person commits PERJURY when, under oath or affirmation, in a proceeding or in any matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true. PERJURY IS A CLASS 3 FELONY.

Please mail your completed, **signed and notarized**, complaint form to:

**Cook County Sheriff's Office of Professional Review**
3026 S. California
Chicago, IL 60608



Exhit D

ADA Guide



# Americans with Disabilities Act

# Disability Related Access for Inmates and Visitors Guide

Julie Ballinger, M.A.

Vinh Nguyen, J.D., M.B.A. (Ed.)

**Guide Purpose**

This guide is designed to be utilized by local, state, and federal government correctional institutions and government-funded private detention facilities, in order to educate and train facility staff regarding their Americans with Disabilities Act (ADA) and other civil rights responsibilities towards inmates with disabilities and visitors with disabilities.

**Acknowledgements**

A very special thank you and appreciation to Aaron J. Martinez, who holds a M.A. in Executive Leadership with 22 years in law enforcement and detention in the State of New Mexico. His generous time reviewing and sharing his expert feedback on the final stages of this guide was invaluable in assuring quality, coherence, and relevant content.

Special recognition and thank you to Terry Brigance, Josh Walker, and Karla Cuesta for their comprehensive review and editing of this guide, aiding in making it a refined tool for correctional institutions and others to utilize to assure compliance with the ADA.

The contents of this booklet were developed by the Southwest ADA Center under a grant (#90DP0092) from the National Institute on Disability, Independent Living, and Rehabilitation Research (NIDILRR). NIDILRR is a Center within the Administration for Community Living (ACL), U.S. Department of Health and Human Services (HHS). The contents of this guide do not necessarily represent the policy of U.S. Department of Health and Human Services, and endorsement by the Federal Government should not be assumed.

The Southwest ADA Center at ILRU
TIRR Memorial Hermann
1333 Moursund St.
Houston, Texas 77030
713.520.0232 (Voice/TTY)
www.southwestada.org

The Southwest ADA Center is a program of ILRU (Independent Living Research Utilization) at TIRR Memorial Hermann. The Southwest ADA Center is part of a national network of ten regional ADA Centers that provide up-to-date information, referrals, resources, and training on the Americans with Disabilities Act (ADA). The centers serve a variety of audiences, including businesses, employers, government entities, schools, and individuals with disabilities. Call 1.800.949.4232 to reach the center that serves your region or visit www.adata.org.

© Southwest ADA Center 2019. All rights reserved.

Principal Investigator:     Lex Frieden
Project Director:            Vinh Nguyen
Publication Staff:          Marisa Demaya, Diego Demaya, George Powers, Leah Rhule, and Melanie Thornton

The information herein is intended solely as informal guidance and is neither a determination of legal rights or responsibilities, nor binding on any agency with enforcement responsibility under the ADA or any other law.

# *Table of Contents*

INTRODUCTION........................................................................................................................1

The Americans with Disabilities Act (ADA)...........................................................................2

Disability Civil Rights Apply to Correctional Institutions ......................................................2

Who Is Protected Under The ADA? .........................................................................................3

Qualified Individual with a Disability......................................................................................5

Designated Person Who Assures Compliance..........................................................................5

ADA Grievance Process / Notice of Rights / Filing an ADA Complaint .................................6

Policy and Procedures Equals Access.......................................................................................7

Limitation on State and Local Government Obligations ...........................................................8

Direct Threat..............................................................................................................................9

Integrated Settings Priority........................................................................................................9

Program Access.........................................................................................................................10

Architectural and Transportation Access .................................................................................12

Policy Modification...................................................................................................................14

Effective Communication..........................................................................................................16

Other General Requirements.....................................................................................................20

Service Animals........................................................................................................................21

Mobility Devices / Other Power-Driven Mobility Devices.....................................................23

Common Access Complaints by Inmates and Visitors.............................................................24

CONCLUSION ..........................................................................................................................25

Resources...................................................................................................................................26

## *INTRODUCTION*

### The Immense Need for Awareness and Training

According to the U.S. Bureau of Justice Statistics, an estimate of 32 percent of state and federal inmates have a disability, meaning more than 750,000 people with disabilities are incarcerated across the nation.[1] This includes inmates with psychiatric disabilities exceeding the number in state psychiatric hospitals tenfold[2] and an estimate of tens of thousands of deaf people that are currently incarcerated.[3] This number will increase as inmates gain various debilitating conditions through the natural aging process. A report conducted in 2014 by the Pew Charitable Trusts and the John D. and Catherine T. MacArthur Foundation reveals that inmates gain disabilities at a higher rate than people who are not incarcerated.

Inmates with disabilities who need accommodations are often overlooked, ignored, or even punished for their need of equal access. Abuse and neglect can be common features of prison life at higher rates for inmates with disabilities. The time they serve is harder, with more sanctions imposed and less access to positive programming than other inmates. Reported cases in 2016 describe situations in 21 states where facility staff seized wheelchairs, canes and walkers from inmates and denied them accommodations, services and programs in violation of the Americans with Disabilities Act (ADA).[4]

According to John Wodatch, the head of the Disability Rights Section of the U.S. Department of Justice's Civil Rights Division from its inception in 1995 until 2011, the majority of the thousands of annual complaints the office received were from inmates with disabilities, and nearly all of them were substantiated.[5] Due to these discriminatory practices, inmates with disabilities can end up living in a "prison within a prison."[6]

Additionally, about 85 percent of incarcerated youth have a disability.[7] These youth with disabilities (often undiagnosed) present a unique and particularly vulnerable group in juvenile facilities. They are referred to the juvenile justice system earlier than youth without disabilities and they are referred for more serious crimes and experience shorter survival times before they recidivate.[8]

Visitors with disabilities often face hindrances and barriers when trying to visit an inmate because the facility fails to accommodate their disabilities. Barriers include a lack of accessible parking, inaccessible entrances and visitation areas, lack of effective communication or a modification of policy that would make the facility accessible to the visitor.

1

## *The Americans with Disabilities Act (ADA)*

The **ADA** was signed into Law in 1990 and contains five titles.

- ➤ **Title I Employment** prohibits discrimination on the basis of disability in employment.

- ➤ **Title II State and Local Government** gives people with disabilities an equal opportunity to benefit from all programs, services, and activities.

- ➤ **Title III Public Accommodations** covers businesses and nonprofits and their access obligations to people with disabilities.

- ➤ **Title IV Telecommunications** requires phone companies to provide telecommunications relay services for people who have hearing or speech disabilities and closed-captioning of Federally funded public service announcements.

- ➤ **Title V Miscellaneous** provides instructions to Federal agencies involved in regulating and enforcing the other Titles, prohibits against retaliation and coercion, and more.

## *Disability Civil Rights Apply to Correctional Institutions*

The ADA states that no individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity, including correctional institutions.

The U.S. Supreme Court confirmed that **Title II of the ADA** does apply to state prisons in their treatment of prisoners in *Yeskey v. Pennsylvania Dept. of Corrections*, 524 U.S. 206, 213 (1998) despite the state's arguments that prisoners did not "benefit" from imprisonment. The Supreme Court also recognized that Congress responded to the history of mistreatment of prisoners with disabilities by extending Title II's protection for them beyond violations of the Eighth Amendment's prohibition against cruel and unusual punishment in *United States v. Georgia*, 546 U.S. 151 (2006).

**Section 504 of the Rehabilitation Act of 1973, as amended,** applies to federal, state and private prison facilities receiving federal funding, and programs or activities conducted therein, and essentially provides the same protections as the ADA.

The ADA Title II applies to correctional institutions regarding **facility visitors** with disabilities. Section 504 also applies if the institution receives federal funding.

Government-funded private correctional institutions are obligated to carry out the government's ADA Title II and Section 504 obligations.

It is worth noting that the Civil Rights of Institutionalized Persons Act (CRIPA) authorizes the U.S. Attorney General to investigate conditions of confinement at state and local government institutions such as prisons, jails, pretrial detention centers, and juvenile correctional facilities. The Attorney General may initiate civil law suits where there is reasonable cause to believe that conditions are "egregious or flagrant," residents are subjected to "grievous harm," and are part of a "pattern or practice" of resistance to residents' full enjoyment of constitutional or Federal rights included in Title II of the ADA and Section 504 of the Rehabilitation Act.[9]

Therefore, it is imperative that all facility staff, including administrators, correctional treatment specialists, compliance officers, medical and other staff should have a functioning knowledge of ADA requirements as it pertains to the institution. Basic ADA information must be included in correctional officer and other staff training, especially during their first year of employment.

### *Who Is Protected Under The ADA?*

Assuring that the correctional facility is complying with the ADA begins with the knowledge of what inmates and visitors are covered under the ADA. Not everyone with a medical condition is protected by the ADA. In order to be protected, a person must have a disability as defined by the law.

An individual may establish coverage under any one or more of the three prongs of the definition of disability:

- ☞ A physical or mental impairment that substantially limits one or more major life activities.
  - o Note that the term "substantially limits" under the ADA Amendments Act shall be construed broadly in favor of expansive coverage and is not meant to be a demanding standard. Many **medical conditions** by their inherent nature will give rise to a substantial limitation of one or more major life activities, therefore with respect to these types of impairments, the necessary individualized assessment of ADA coverage should be particularly simple and straightforward.

- ☞ A record of such an impairment.
  - o This means that the individual has a history of, or has been misclassified as, having a mental or physical impairment that substantially limits one or more major life activities.

EEOC: Questions and Answers on the Final Rule Implementing the ADA Amendments Act of 2008 at www.eeoc.gov/laws/regulations/ada_qa_final_rule.cfm

---

### *Qualified Individual with a Disability*

---

Qualified **inmates** with disabilities should have access to all programs to which they would otherwise be entitled whether mandatory or voluntary.

Correctional institutions must ensure that qualified inmates with disabilities **shall not be excluded** from participation in, or be denied the benefits of, the services, programs, or activities of a facility because it is inaccessible to or unusable by individuals with disabilities. This includes correctional facilities developing **non-discriminatory eligibility criteria** for early release, parole, or other re-entry programs.

A qualified individual with a disability is a person who can meet the essential eligibility requirements of a program with, if needed, reasonable modifications to rules, policies, and practices, and/or with the removal of architectural, communications, or transportation barriers.

NOTE: The same requirements apply to **visitors** who are eligible to participate in services and programs.

Make sure requirements are truly <u>necessary</u> if they tend to screen out individuals or class of individuals with disabilities.

**Generally, facilities, for example, shall NOT place inmates with disabilities:**
(Part 35 Nondiscrimination on the Basis of Disability in State and Local Government Services § 35.152 Jails, detention and correctional facilities, and community correctional facilities. *www.ada.gov/regs2010/titleII_2010/titleII_2010_regulations.htm#a35152)*

- in inappropriate security classifications because no accessible cells or beds are available,
- in medical areas unless they are receiving medical care or treatment,
- in facilities that do not offer the same programs as facilities where they otherwise would be housed, and
- in distant facilities where they would otherwise not be housed that would deprive them of visitation with family members.

---

### *Designated Person Who Assures Compliance*

---

Correctional institutions must have an appointment of one or more **designated persons who assure compliance** with Section 504 and the ADA, as amended, including investigating of complaints on behalf of inmates and visitors.

 Is regarded as (or treated as or is perceived as) having an impairment that substantially limits one or more major life activities even if the individual does not, in fact, have such an impairment or the impairment is minor.

- o This means that the individual may not have any impairment or has a minor impairment but is discriminated against by an entity because it believes the individual has such an impairment.

Also, a public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual because of a **relationship** or **association** with an individual with a disability.

 The definition of disability under the ADA is intended to have **broad coverage**, and major life activities may include, but are not limited to: caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, etc. This also includes the operations of major bodily functions such as the immune system, normal cell growth, digestive system, etc. Hepatitis C or HIV are examples of a substantial limitation of one or more major bodily functions.

Temporary, episodic (conditions that result in sporadic and usually irregular symptoms) or in-remission impairments (such as cancer) are covered if these factors substantially limit a major life activity when active. Episodic condition examples are epilepsy, migraines, post-traumatic stress, and psychiatric conditions.

### Individuals NOT covered under the ADA

The term "disability" does not include pedophilia, exhibitionism, voyeurism, other sexual behavior disorders, compulsive gambling, kleptomania, or pyromania. Individuals who have psychoactive substance use disorders resulting from current illegal use of drugs are also not protected under the ADA. Please note that an individual who has a history of being an addict and is no longer using, would be covered under having a record of such an impairment.

### Determining who is covered

Disabilities can include chronic illness, physical disabilities, hearing and visual impairments, psychiatric conditions, intellectual/developmental disabilities (**I/DD**), etc. A best practice is to have trained and supervised corrections staff, including correctional treatment specialists, conduct screening interviews of all inmates upon admission to help identify those inmates with disabilities. Also, it is important to follow up with inmates as they may develop disabilities during incarceration and will then have ADA rights.

### For more information on ADA coverage:

Questions and Answers about the Department of Justice's Final Rule Implementing the ADA Amendments Act of 2008 at www.ada.gov/regs2016/adaaa_qa.html.

This appropriately trained and qualified individual(s) is one who has been designated by the warden/superintendent or other authority to coordinate efforts to comply and carryout responsibilities defined by the ADA and section 504. This person is usually identified as the ADA or 504 coordinator and can be a designated compliance officer who is properly trained in their legal requirements.

It is a best practice and institutional standard that the ADA/504 coordinator "develop relationships with, and use the expertise of, institutional staff, advocacy groups, nonprofit organizations, agencies of government, and others that have relevant knowledge and experience."[10]

The facility shall make available the name, office, email address, and telephone number of any designated employee(s) to visitors. The designated employee(s) should be readily accessible to inmates and visitors.

The institution must also keep formalized documentation of their ADA compliance efforts, which can be completed by the ADA/504 coordinator.

### *ADA Grievance Process / Notice of Rights / Filing an ADA Complaint*

#### ADA Grievance Process
Correctional institutions must give notice of ADA rights. They must also establish and implement **inmate** ADA grievance procedures to address disability-related complaints that provide for **prompt** and **equitable resolution**. These procedures can be incorporated in the facility's grievance procedures but must meet the ADA grievance process requirements. Grievance procedures that meet the same legal requirements must also be adopted for **visitors**.

#### Notice of Rights
Notice of Rights and Grievance Procedures must be **widely publicized** to inmates and visitors. This includes providing a means of effective communication to inform those inmates and visitors who have disabilities which directly impacts their communication. Case managers/correctional treatment specialists can play a key role at admission in providing inmates notice of ADA rights. These rights should also be publicized to visitors via the website and posted in visitation areas.

#### Filing a Complaint
**Inmates** can file a complaint with U.S. Department of Justice (USDOJ) and/or bring a private lawsuit in court. However, an inmate may not file a lawsuit without first going through the steps designated by the Prison Litigation Reform Act. The USDOJ's Administrative Remedy Program grievance requirements apply to all federal inmates regardless of where they are housed (local, state, federal, or government funded facilities). Once the Administrative Remedy Program requirements have been exhausted, the inmate may file in court. All correctional institutions should ensure that

the provision of accommodations, if needed, are given to inmates with disabilities in order to prepare and process a request or an appeal.

**Visitors** can choose to utilize the correctional institution's visitor grievance process and/or file with USDOJ or bring a private lawsuit in court.

For more information see the USDOJ's ADA Best Practices Tool Kit for State and Local Governments, Chapter 2 - ADA Coordinator, Notice & Grievance Procedure: Administrative Requirements Under Title II of the ADA at www.ada.gov/pcatoolkit/chap2toolkit.htm.

For more information on federal grievance requirements see the Federal Bureau of Prisons' Management of Inmates With Disabilities at www.bop.gov/policy/progstat/5200_005.pdf and 28 C.F.R. § 39.170, Compliance procedures at www.ecfr.gov/cgi-bin/text-idx?SID=6b20515b0c8c2cf03ae0e63bd1c8595c&mc=true&node=pt28.1.39&rgn=div5. Also see Federal Bureau Prison Administrative Remedy Program 1330.18 Statement at www.bop.gov/policy/progstat/1330_018.pdf.

---

### *Policy and Procedures Equals Access*

---

**Inmates with Disabilities**

It is a best practice to develop detailed policy and procedures on how an inmate can request an accommodation and how the corrections facility will process that request. Make sure to include a specific process of granting and providing or denying the request. For example, an *Accommodation Request Form* can identify the inmate's limitations and the specific accommodation that will allow them to perform the specified activity.

In order to determine if an effective accommodation should be provided, the facility, where appropriate, can review the inmate's medical records, arrange to have the inmate diagnosed by appropriate professionals, interview staff, and take other actions reasonably necessary. It should always engage in an interactive process, which is an informal, flexible conversation with the inmate to help determine the most appropriate accommodation. A promising practice may include a partnership with the inmate's case manager, the ADA/504 coordinator, and if appropriate, medical staff, to interact with the inmate to identify the necessary accommodation, as well as to perform ongoing monitoring to assure the barrier removal solution remains effective.

A grievance process is legally required and should be included in the policy and procedures for inmates who believe that they have been discriminated against due to disability.

 *Pierce v. District of Columbia*, **128 F.Supp.3d 250 (D.D.C. 2015)**
Prison officials have a duty to assess the potential accommodation needs of inmates with known disabilities who are taken into custody and to provide accommodations that are necessary, whether or not the person has made a specific request for an accommodation and without relying solely on assumptions about that person's needs.

### Visitors with Disabilities

Officials should develop policies and procedures that apply to members of the public who enter any department facility or participate in any department sponsored program, service, or activity as a visitor. This should contain directives and procedures on how to assure a visitor's access through policy modification, effective communication, or physical barrier removal. Clearly state the steps a visitor must take to make a request and engage in the interactive process with the visitor to determine the most effective accommodation. These ADA notifications and procedures should be included in the formal visitation process a visitor must undergo that allows them to enter the facility.

### Visitor Grievance Process

The ADA requires a grievance process for visitors who believe that they have been discriminated against on the basis of disability. This notification and procedure could be included in the visitor signature form that contains the visitation rules and regulations. However, the notification of grievance should be presented in a manner where it is easily noticeable to the visitor.

Tip: Research and model other correctional facility ADA policy and procedures for inmates and visitors that accurately adheres to the law.

---

### *Limitation on State and Local Government Obligations*

---

The correctional entity is not required to provide program access if it would result in a fundamental alteration in the nature of a program or undue financial and administrative burden. A fundamental alteration is a change that is so significant that it alters the essential nature of the facilities, services, privileges, or accommodations offered.

### Weighing Civil Rights vs. Undue Burden

In some circumstances, the lack of disability access could result in significant detrimental harm to the inmate. An example of this is refusing to modify a policy that would allow the provision of a specialized mattress for an inmate with paralysis to help prevent skin pressure ulcers. Another example is an inmate, who due to deafness has limited reading abilities, subjected to multiple disciplinary actions because they are unaware of the standards for acceptable behavior due to being denied a qualified sign language interpreter (effective communication) in order to understand the information contained within the offender orientation handbook.

If an undue burden defense is being considered, the facility, along with the program administrator and responsible clinician, should carefully determine the detrimental harm that would occur to an inmate if the particular accommodations are not granted.

According to USDOJ regulation, 28 C.F.R. § 35.150(a)(3), the **correctional institution carries the burden of proving fundamental alteration or undue burden**. The institution must consider all resources available for use in its funding and operation and <u>must</u> <u>document</u> the reasons for reaching that conclusion. The institution must do what it can up to the point of fundamental alteration or undue burden to create access.

## *Direct Threat*

Security is the prime concern for facility officials. If it is objectively determined that a person with a disability is truly a direct threat that cannot be mitigated, then they may be excluded from participation in a service or program.

Direct Threat is defined as a <u>significant</u> risk to the health or safety of others that cannot be eliminated by:

- modification of policies, practices or procedures (including accommodations) or
- provision of auxiliary aids or services (effective communication).

The correctional institution can have legitimate safety requirements based on <u>actual</u> risks and facts, which should be documented as to why it is a risk and what facts make it a risk. For example, if an accommodation is provided, and it is used as a weapon, the inmate may have forfeited the right to that accommodation. However, this does not necessarily release the institution from creating access by another means.

## *Integrated Settings Priority*

In accordance to fair treatment of inmates and the ADA, those with disabilities must be placed and housed in the most integrated setting appropriate to the needs of the individuals. Integrated settings allow people with disabilities to interact with people without disabilities to the fullest extent possible.

It is vital to establish facility **correctional standards** that include classification and placement procedures that generally place inmates with disabilities in facilities offering the same programs and opportunities as are afforded to prisoners without disabilities. Therefore, programs and services need to be accessible to inmates with disabilities who reside in the facility.

An example is providing the services necessary to safely permit inmates with mobility disabilities, I/DD or psychiatric disabilities to reside and participate in the same programs as nondisabled inmates rather than being placed in restricted housing and segregated programs. This also means there needs to be accessible housing in all security classifications and/or program levels of the facility.

Inmates with disabilities should have access to appropriately trained and qualified staff who are educated in the difficulties faced by inmates with various disabilities (i.e., physical, cognitive, and psychiatric). The difficulties could be due to the inmate's particular disability or due to inaccessible facility, programs, or services.

**Separate Programs**
The correctional institution can have tailored programs and services available for inmates with disabilities. These programs may be needed in order to facilitate program access and integrated participation. However, it is prohibited to exclude inmates with disabilities from other programs just because special programs are available for inmates with disabilities.

Different or separate aids, benefits, or services to individuals with disabilities can also be offered ONLY if the programs must be separate to be effective and should be the option of last resort.

---

### *Program Access*

---

A facility, when viewed in its entirety, must be readily accessible to and usable by inmates and visitors with disabilities. Program accessibility may be achieved by a number of methods with integration priority. These methods include:
- policy modification/accommodation,
- effective communication (including an accessible website for visitors with disabilities), and
- architectural access.

**Examples of Correctional Services, Programs, And Activities That Should Have Program Access:**
- libraries
- job / vocational training
- boot camp
- substance abuse programs
- phone calls
- housing and cell assignment
- dining hall
- life skills classes

- social services
- sexual offender treatment programs
- religious services
- work release and early release programs
- confinement level
- medical and mental health screening
- visitation programs

10

- medical, dental, and mental health services
- anger management
- academic and apprenticeship education
- commissary services

- personal hygiene care / accessible bathrooms
- recreational programs
- parenting classes
- appropriate classification
- food availability during non-dining hours

**Creative Program Access Solutions**

Undoubtedly, some programs may call for highly creative access solutions for inmates with various disabilities. Participation in earned release programs such as conservation projects of wildland fire suppression, flood and other emergency responses, maintenance of public lands, and manual toiling of farms typically require specific eligibility qualifications. Inmates must earn the right to participate by their non-violent behavior and conformance to rules. They must also be physically fit, carefully screened and medically cleared.

Where inmates with various disabilities meet the behavioral criteria but may not meet the physical standards due to a disability, the facility should explore possible program expansion to include other components and responsibilities, such as administrative or sideline support work. Filling out reports and paperwork, coordinating team work, inventory of and sorting picked crops, food preparation and on-site meal services by these inmates could possibly be performed so that they are integrated in the program and have equal opportunity to earn early release time.

**Last Resort**

If a facility administers specific programs (including those involving earning early release) that, after extensive due consideration, cannot become accessible to an inmate with a disability, then as a last resort, the facility must assure equal access to the same or similar benefits by offering a substitute or separate accessible group or individually tailored program.

**Services Provided by Means of Kiosks and Computers**

Kiosks and computers can provide access to a host of information for inmates and may also be utilized by visitors to the facility. Information such as learning courses, job vacancies, health, rehabilitation, legal, printing forms, filing grievances, making medical appointments, scheduling laundry, and video visits can be accessed.

**Considerations When Making Kiosks Accessible**

Kiosks should be operable for individuals who have low vision or blindness, little or no color perception, limited or no hearing, limited manual dexterity, limited reach and strength, a prosthetic device, limited or no speech, or limited cognitive skills. Kiosks should also be operable without time dependent controls.

11

Computers, keyboards, and kiosks should (but not limited to):

- be equipped with accessibility features/software (such as screen reading software),
- be located in areas that provide ease of access for wheelchair users and others with mobility disabilities,
- have video captioning, and
- follow "Symbols" from the Department of Justice's 2010 Standards (707.6.3.2) if there are function keys.

Policy modification that allows for inmate or visitors with disabilities that need increased time allotment to complete a task should be given.

Correctional facilities first and foremost must make sure that when they upgrade or acquire new kiosks, that the latest accessible features are incorporated including, but not limited to, the following:

- physical structure of the kiosk, such as the height and angle of the screen and keyboard,
- an assistive keyboard,
- audio and headphone outputs,
- screen interface including size and color of text and buttons on screen, clear identification of form inputs, easily understood language, and the provision of audio alternatives for all information or functionality conveyed by images or text,
- produce a text-to-speech capability, and
- Braille instructions to turn on speech output.

Contact the U.S. Access Board for more information and guidance at (800) 872.2253 (voice) or (800) 993.2822 (TTY) and go to www.access-board.gov.

---

### *Architectural and Transportation Access*

---

### Architectural Access

Not all cells and facilities or common areas must be physically accessible, and structural changes need not be implemented where other methods are effective for inmates with mobility disabilities. However, in most cases, the only way to assure full integration and equal access to programs and services is to remove physical barriers such as enlarging a doorway or building a ramp to make a recreational area accessible. Minor accommodations such as adding a cup dispenser to an inaccessible water fountain could be considered. Additionally, remove communication barriers such as installing flashing fire alarms for those who cannot hear.

Required applicable technical provisions addressing physical access issues are found in the Architectural Barriers Act (www.access-board.gov/the-board/laws/architectural-barriers-act-aba)

and the U.S. Department of Justice's 2010 Standards
(www.ada.gov/2010ADAstandards_index.htm). The 2010 Standards for designing an accessible
cell is found at www.ada.gov/accessiblecells.htm.

**For More Extensive Information**
The Great Lakes ADA Center's Accessible Detention and Correctional Facilities archived webinar
deals with the unique security features that can pose challenges to designing accessible detention
facilities. This webinar highlights applicable provisions for these facilities at
www.accessibilityonline.org/ao/archives/42.

Also contact the U.S. Access Board for further information at (800) 872.2253 (voice) / (800)
993.2822 (TTY), www.access-board.gov.

**Transportation Access**
Standard transport practices can be dangerous for inmates with mobility disabilities. These inmates
are at a high risk of unintentional injury when being transferred and seated in a vehicle that is not
accessible to them. Individuals with mobility disabilities are usually unable to keep themselves
securely seated without the proper space and restraints. Also, mobility equipment can sustain
damage if it is not properly stored or secured in the vehicle. Safe transport for inmates who use
manual or power wheelchairs might require the correctional facility to make minor modifications to
existing cars or vans, or to use lift-equipped vans or buses. Some individuals who use assistive
devices like crutches, braces, or even manual wheelchairs might be safely transported in vehicles
other than a lift equipped van, but this must be determined on a **case-by-case basis**. Facility staff
should be trained on all accessible transportation facets, including how to use lift equipment,
properly transferring and securing the inmate in the vehicle, and properly securing mobility
equipment. Contact your regional ADA Center (www.adata.org) to learn of guidance resources
involving accessible and safe transportation procedures.

**※ *Clemons v. Dart*, 168 F.Supp.3d 1060 (N.D. Ill. 2016)**
Correctional facilities have occasionally tried to avoid providing accessible facilities by offering
inmates assistance with navigating physical barriers. Rather than assigning an inmate who used a
wheelchair to one of the accessible rooms, the Cook County Sheriff provided him with an
inaccessible room but promised that nurses were always on call to help him access the sink, shower,
and toilet in his room. The court rejected that arrangement, reasoning that the purpose of the ADA,
even in the jail context, is to promote the ability of individuals with disabilities to engage in
"independent living." Requiring him to rely on nursing assistance rather than providing him the
means to address his own basic needs was not "equivalent access." "Title II requires affirmative,
proactive accommodations necessary to ensure meaningful access to public services and programs,
not accommodation upon request."

### *Policy Modification*

The correctional institution must make reasonable modifications in policies, practices, and procedures (which can include accommodations) when necessary to avoid disability discrimination by affording goods and services to a person with a disability unless it would fundamentally alter the nature of the goods and services provided. If a fundamental alteration will occur, the entity must then do what they can to the greatest extent possible.

To decide what is a "reasonable modification," courts have weighed the needs of inmates with disabilities rights against the structural, financial, and administrative concerns of the facility.

In particular, courts examine:
- Whether the modification will fundamentally alter a program or activity.
- If making modifications that would result in undue financial and administrative burdens.

Courts also examine penological concerns such as safety. The urgency of the need and safety considerations play significant roles in determining whether a modification is reasonable. Correctional facilities do not have to make modifications that would interfere with their ability to respond to a safety threat, as such modifications would not be reasonable. However, in facilitating compliance with this obligation, it would be a best practice to create and implement policies that foster staff to:
- seek assistance from facility-based crisis intervention teams and mental health professionals,
- learn de-escalation techniques, and
- forego discipline and provide treatment where it is apparent that an inmate's negative or disruptive behavior is related to their disability.

**Policy Modification Examples for Inmates**
- Participation in boot camp by an inmate who has a history of hypertension or has a prosthetic leg, with accommodations if needed, that would make the inmate eligible for early parole release.

- Exception to prohibiting Deaf and hard of hearing inmates from using toll-free "800" numbers or "711" access numbers to access Relay Services.

- Exception to the rule forbidding inmates from storing food in their cells, so that an inmate who has diabetes can keep their blood sugar stable.

- Allow an inmate with a psychiatric condition to have or work one consistent schedule.

- Allowing inmates who take psychiatric medication to participate in drug treatment programs and other activities that are required or help inmates to be eligible for parole.

- Modify policies and procedures to require that inmates with serious mental health or developmental disabilities be evaluated by appropriate staff to consider mitigated sanctions if these inmates are subject to serious misconduct sanctions and to resolve allegations of non-violent offenses informally.

- Implement policies that no longer permit discipline for self-injurious behavior due to disability.

✳ *Reaves v. Dep't of Corrections*, **195 F.Supp.3d 383 (D. Mass. 2016)**

A man with quadriplegia, who was unable to sit in a wheelchair, challenged various aspects of his incarceration. Prison officials had refused to transport him with a gurney or modify its schedule and activities to allow him to safely go outside or socialize with his peers — procedures that had prevented him from showering, going outdoors, or socializing with peers for over sixteen years. The court found that not only was he being treated differently from his peers; he was being denied access to experiences that are "fundamental to what it means to be human."

**Visitors and Policy Modification**

Visitors with disabilities should be made fully aware, as they go through the formal visitation process in order to be allowed to enter the facility, that they have a right to request a reasonable modification of policy, if needed, to create visitation access, even if it affects visitation rules. How a visitor requests and receives a modification/accommodation should be easily understood and not be a burden to complete. This process should be posted on the institution's website and included in any visitor policies and procedures.

A visitor's need for the policy modification/accommodation, such as a request to bring in food in order to maintain stable blood sugar due to diabetes, may cause concern because this could be an opportunity for contraband to enter the facility. In these cases, the visitor may need to make prearrangements with the facility and possibly produce, from an appropriate professional, a letter indicating their need to do so. As with all visitors, the facility may conduct an examination of the visitor's food. Alternative accommodations could be that the facility provides the food that is specified by the visitor or that the visitor is allowed to purchase commissary items.

**Policy Modification Examples for Visitors**

- Allowing visitation in an accessible area for the visitor who is a wheelchair user if the designated visitation area is inaccessible.

- Assisting a visitor with cognitive disabilities in making a request for a needed accommodation.

15

The decision of what type of auxiliary aid or service that will be effective will vary in accordance with the following analysis:

- What is the method of communication used by the individual?
- What is the nature, length, and complexity of communication involved?
- What is the context in which communication is taking place?

Auxiliary aids and services should be provided during orientation. This assures that an incoming inmate with a communication related disability can learn and understand facility rules and sanctions, mail and visiting procedures, grievance procedures, eligibility requirements for programs, how to participate in these services, how to access medical and mental health care, terms of release, etc. Signed acknowledgement of receipt of initial orientation and inmate handbook should only occur after the inmate has been afforded effective communication as it relates to their disability.

Providing effective communication through auxiliary aids and services should be a normal part of services and programs (such as education, anger management, and obtaining reintegration tools) and activities (such as sports, recreational, spiritual and work). Effective communication is paramount in an inmate's discipline due process, including in disciplinary hearings. Benefits such as learning of and understanding resources upon release are also critical.

Correctional institutions must provide auxiliary aids and accessible formats in a timely manner, and in a way that protects the privacy and independence of the individual. It is important to be familiar with the **Relay Service** (see Resource section) and up-to-date assistive communication technology. If the institution has extensive telephone contact with the public, it must have teletype machines (TTY) and should consider providing videophones. Sign language interpretation services through video phones are useful when an inmate is Deaf or hard-of-hearing and is in need of this service.

**Effective Communication Examples for Inmates**

- Providing inmates with vision impairments access to tape players and books on tape, large print, Braille reading materials (available free through the Library of Congress), or providing an electronic tablet with accessible features, in order to fully participate in various programs.

- Providing Deaf inmates qualified sign language interpreters for classification interviews, orientation, medical appointments, required classes, and treatment programs.

- Divide assignments into smaller tasks and goals for inmates with cognitive disabilities.

- Read and explain, where needed, the inmate handbook and written orientation materials to an inmate with an intellectual disability.

- Always use captioned videos.

- Allowing a visitor with anxiety disorder to visit the inmate in a quiet area.

- Allowing an ADA defined service animal to accompany its handler/visitor.

---

## *Effective Communication*

---

The correctional facility must provide **inmates** with communication related disabilities an effective means, through auxiliary aids and services, to receive and understand information and to be able to communicate with others in any and all relevant aspects of facility living.

The facility must also provide disabled **visitors** auxiliary aids or services, when needed, so they can participate in all visitor services and programs.

Inmates or visitors who may need effective communication may include people who are Deaf, deaf-blind, hard of hearing, blind or have low vision, have speech related disabilities or cognitive and intellectual disabilities.

Communication can be achieved through the use of auxiliary aids and services assuring communication accessibility. When selecting an auxiliary aid or service, the correctional institution must give primary consideration to the aid or service preferred by the individual. Usually that individual is best able to identify the communication barriers that hamper participation. However, the public entity can provide a different aid or service if that aid or service is an effective means of communication.

For example, a Deaf individual who has limited reading skills due to deafness, passing notes back and forth during a medical exam will not be effective. A qualified sign language interpreter will be needed to assure the inmate can fully participate in their own exam.

**Auxiliary aids and services can include:**

- qualified readers
- taped texts
- audio recording
- materials on disk/flash drive
- Braille or large print materials
- accessible web sites
- qualified sign language interpreters
- video remote interpreting (VRI)
- notetakers
- transcription services

- written materials
- telephone handset amplifiers
- videophones
- assistive listening systems
- telephones compatible with hearing aids
- closed or open captioning
- teletype machines (TTY)
- screen reading software
- electronic reading/writing pads

The only **limited exceptions** to this rule are the following circumstances:

- Where there is a specific request by a person with disability to use a friend, family member, or other person to interpret, and this accompanying adult agrees to do this, and reliance on that person is appropriate under the circumstances.

- In emergency situations where there is imminent threat to the safety or welfare of the individual or public and no interpreter is available, a friend, family member or other person can be used as an interpreter.

- Use of children as interpreters is only permissible in emergencies involving imminent threat to the safety or welfare of the individual or the public where there is no interpreter available.

**Financial Responsibility**

The institution assumes full financial responsibility for auxiliary aids or services such as qualified sign language interpreters or alternative formats whether it is for an inmate or a visitor.

Admittedly, correctional institutions may be concerned with the possible costs associated with providing effective communication for inmates. In weighing off civil rights and rehabilitation vs. undue burden, it stands to reason that inmates who do not receive needed aids and services during incarceration are penalized for having a disability or live in a "prison within a prison."[11] This means that prolonged communication deprivation can lead to mental health conditions, irreversible loss of communication and social abilities, and these inmates can be more susceptible to be victims of violence in detention facilities. The inmate may also take legal action against the institution that will most likely result in the courts mandating that the institution provide these services as discussed below.

**Legal Obligations**

Court cases have illustrated the types of accommodations facilities may have to provide to ensure its disabled inmates can communicate effectively. These have included systems that inform inmates of announcements made by loudspeaker, access to functioning TTYs, sign language interpreters, hearing aids, batteries for hearing aids, video remote interpreting systems, inmate helpers, visual alarms, and other auxiliary aids. Further, courts have found that inmates are entitled to these types of accommodations in a wide variety of settings, ranging from religious services, medical consultations to disciplinary hearings.

***United States v. South Carolina Dept. of Corrections*, DJ # 204-67-174, (Settlement Agreement, March 29, 2018)**

The Department of Justice ADA settlement agreement with the South Carolina Department of Corrections (SCDC) ensures that the SCDC will provide communications with inmates who have a hearing disability that are as effective as communications with other inmates. The SCDC must

- Provide an assistive listening system device to an inmate who wears hearing aids, so they can listen to and follow instructions or take part in therapeutic activity.

- Modifying policies that limit the length of Relay calls because the call may work in a way that takes longer than average phone calls.

- Providing videophones, which is a telephone device transmitting and receiving a visual image as well as sound, for inmates whose primary language is American Sign Language.

- Making sure Deaf and hearing-impaired inmates do not miss pill call, medical appointments, or meals because these events are only announced verbally.

- Talking to an inmate with a brain injury in a quiet, distract-free setting to relay important instructions and information.

- Read aloud what is written on the board and keep instructions brief and uncomplicated for inmates with learning/reading disabilities.

- Providing a qualified sign language interpreter during a Deaf inmate's medical screening and appointments.

- Allow time for clarification of directions and essential information for inmates with various cognitive related disabilities.

**Effective Communication Examples for Visitors**

- Providing a quiet place of visitation so a hard of hearing visitor is able to communicate with an inmate.

- Providing an amplification device for use in the visitation booth telephones which allows physical proximity and relative quiet.

- Facility website is accessible to the public who are blind, have low vision, are hard of hearing, or Deaf (see Resources section regarding website accessibility).

Court rulings have required facilities to make accommodations for Deaf or hard of hearing visitors who are seeking to communicate with inmates.

**Qualified Sign Language Interpreters**

Correctional institutions must provide the auxiliary aid or service, including **ASL** (American Sign Language) interpreters for inmates and visitors and cannot require that the visitor bring their own interpreter. An ADA qualified interpreter is defined as accurate, effective, expressive, and impartial, and able to use necessary specialized vocabulary.

18

- A modification of policy accommodation can be refused by an individual even if it is effective to remove service barriers. However, in doing so, the individual may not be able to access the program or service.

- Personal services and devices are generally not required to be provided to visitors, however, given the nature of the facility, correctional institutions are required to provide necessary devices and services for inmates such as:

  - canes,
  - walkers,
  - catheters,
  - eyeglasses,
  - urine pouches,
  - wheelchairs,
  - hearing aids,
  - necessary medications,
  - prescribed orthopedic shoes,
  - mattresses that prevent bed sores,
  - oxygen,

  - ostomy supplies,
  - shower chairs,
  - prostheses,
  - orthodontic devices,
  - therapeutic diets,
  - raised toilet seats / grab bars,
  - personal care assistance for hygiene, dressing, eating, etc., and
  - blood sugar level testing equipment.

**Personal Care Attendants**

Personal Care Attendants (PCAs) should be well trained to assist inmates with their activities of daily living and their services must be safe and effective. Regarding using fellow inmates to assist an inmate on a one-on-one basis, the facility should refer to performance-based standards for detention facilities that comply with the ADA.[12]

---

### *Service Animals*

---

**Service Animals and Visitors**

Visitors of inmates may use and be accompanied by their service animal anywhere the visitor is permitted. The facility can identify and incorporate these situations in the visitation process.

The ADA definition of a service animal is limited to a dog that is individually trained to do work or perform tasks for an individual due to disability. The key is recognition and response by the service animal to assist the individual with a disability. Also, a modification in policy must be considered to allow the specific breed of miniature horse (if reasonable), if it is trained to do work or perform tasks for that particular individual with a disability.

honor the choice of the auxiliary service or aid by the individual with a disability, unless the SCDC can demonstrate that another effective means of communication exists.

The SCDC is also required to make the determination of the appropriate auxiliary aids and services during its initial assessment at intake. Effective means must be provided for critical communication, complex information, lengthy exchanges, or anything involving legal or other due processes. This can include the following programs and activities:

- orientation,
- disciplinary hearings,
- classification,
- medical care,
- psychological services,
- educational/vocational programs,
- programs that are required for parole or early-release,
- classification review interviews,
- grievance processes,
- religious services, and
- pre-release instructions.

The SCDC is also required to provide an effective visual or other notification system so that inmates who have a hearing disability do not miss announcements, alarms, or other auditory instruction and information.

The SCDC must also ensure that inmates who have hearing disabilities are cuffed or restrained in a manner that permits effective communication (e.g., cuffing inmates in the front so they can sign; having one hand free in order to write) unless legitimate safety concerns dictate otherwise.

**Videophones**
Expect court cases where advocates argue that the goal of effective communication cannot be fully realized until facilities are required to provide videophones for inmates who communicate with ASL. As a note, ASL is not English and is the primary language for many people who are culturally Deaf. Various states, including Maryland and Kentucky, have agreed to provide videophones per the terms of settlement agreements.

### *Other General Requirements*

The following are other general obligations under the ADA:

- No discrimination through contract is allowed. When contracting with a private sector business, non-profit, or another governmental department, the correctional institution must ensure that its ADA Title II obligations are carried through by that contractor.

- Those who are covered under the ADA have protection against retaliation and harassment.

- Regulation of smoking is allowed.

Only 2 inquiries are allowed if the need for the service animal is <u>NOT</u> obvious nor apparent:

1. Is the animal required because of a disability?
2. What work or task has the animal been trained to perform?

Do <u>not</u> make inquiries about a disability and a task demonstration <u>cannot</u> be asked for nor required.

If a service animal truly affects the security of a facility, or is highly disruptive and the <u>handler does not take effective action</u> to control it, or the animal is not housebroken, the animal may be excluded from a detention facility visiting area. However, the visitor may remain without the animal.

The correctional entity is not responsible for the care or supervision of a service animal.

The animal <u>must</u> be harnessed, leashed, or otherwise tethered. There are only <u>2 limited exceptions</u> to this rule:

- the handler is unable to use these because of their disability, or
- the use would interfere with the safe and effective performance of work or tasks.

However, the unleashed service animal must otherwise be under the handler's control (i.e., voice control, signals, or other effective means).

**Common Service Animal Questions**

1. Does the dog have to wear a special harness or have a training certification proving that it is a legitimate service animal?

No! Many services animals are individually trained by their handlers.

2. Does the ADA cover comfort animals?

No! The ADA does NOT protect comfort/therapy/emotional support animals that do NOT meet the definition of an ADA service animal. A comfort animal is a <u>passive</u> animal that does not perform any individual tasks for its handler.

**Service Animal State Laws**

Some states have passed more stringent service animal laws than the ADA. For example, the New Mexico Service Animal Act (NMSAA), N.M. Stat. § 28-11-3, was passed in 2013 and reflects the ADA and has additional regulations. The NMSAA allows in-training service animals by training organizations or an individual trainer in any building open to the public. Also, violation of this law is a misdemeanor and the offender can be fined up to $1,000.00 or a year in jail, or both. In addition, a person who is misrepresenting their pet as a qualified service animal is committing a misdemeanor violation.

**Who uses Service Dogs?**

Examples of individuals who:

- are blind or have low vision use dogs to guide and assist with orientation,
- are deaf use dogs to alert them to sounds,
- have mobility disabilities can use dogs to pull their wheelchairs or retrieve items,
- have epilepsy may use a dog to warn them of an imminent seizure,
- have psychiatric disabilities may use a dog to remind them to take medication, and
- are service members returning from active duty with new disabilities as they reenter civilian life.

**Service Animals and Inmates**

A service animal can allow for the inmate to become more self-sufficient. However, there are factors that the correctional institution should consider in allowing an inmate to have a service dog. These include how well the animal is trained, the facility's ability to adequately care for the animal in terms of safety, veterinary care, adequate daily routine care, etc.

If the facility has a dog-training program where the inmates train the animals to become adoptable or to assist individuals with disabilities, there could be a contemplation of allowance for an inmate to have a service animal of their own.

Given that correctional institutions are facing an aging population, where disability often accompany age, well trained service dogs can assist in many activities of daily living that would otherwise have to be done by staff. Alleviating staff of such duties could be an aid to the facility.

For more information on ADA service animals:

- Frequently Asked Questions about Service Animals and the ADA www.ada.gov/regs2010/service_animal_qa.pdf
- Service Animal and Emotional Support Animals. Where are they allowed and under what conditions? www.adata.org/publication/service-animals-booklet

---

### *Mobility Devices / Other Power-Driven Mobility Devices*

---

USDOJ has recognized that people with mobility, circulatory, respiratory, or neurological disabilities use many kinds of devices for mobility. Examples of these include walkers, canes, crutches, braces, manual or power wheelchairs and electric scooters. In addition, advances in technology have given rise to new devices, such as Segways®, used as a mobility device by people with disabilities, including injured veterans.

USDOJ's regulations have always stated that ADA covered entities, including correctional institutions, must allow people with disabilities who use manual or power wheelchairs or scooters,

23

and mobility aids such as walkers, crutches, and canes, into all areas where members of the public are permitted.

**USDOJ expanded their ADA regulations** that state covered entities, which would also include correctional institutions, must also allow people with disabilities who **use other types of power-driven mobility devices (OPDMDs)** into their facilities, unless a particular type of device cannot be accommodated because of legitimate safety requirements.

Where legitimate safety requirements bar accommodation for a particular type of OPDMD device, the covered entity, if possible, must provide the service it offers in alternate ways. The correctional facility can identify and incorporate these situations in the visitation process. If due to legitimate safety reasons the facility is unable to accommodate an OPDMD, it should consider a modification in policy, for example, that will enable the visitor to navigate to the visitation site by the facility providing a mobility device or allowing them to visit in an area that is a short accessible distance.

For more detailed information on how these regulations apply, especially those concerning other types of power-driven mobility devices that are powered by batteries, fuel, or other engines (i.e., golf carts, Segways®, etc.) go to www.ada.gov/opdmd.htm.

---

### *Common Access Complaints by Inmates and Visitors*

---

**The Office of Justice Project has identified the following access issues:**[13]

- Inmates who take psychiatric medication are excluded from participating in drug treatment programs that are required to be eligible for parole.

- Inmates with disabilities are excluded from job assignments, preventing them from earning good-time credits qualifying them for early release.

- Inmates with disabilities are housed in the infirmary, segregated from the general population, unable to participate in the programs and activities available to other inmates.

- Many complaints allege lack of accessible cells, toilets, and showers, steeply sloped sidewalks and floors or steps which keep inmates with mobility disabilities from accessing essential areas such as dining halls, libraries, and medical facilities.

- Lack of personal assistance for those who require help with daily activities such as toileting, showering, or feeding - some inmates have received no assistance in toileting and have remained soiled for extended periods of time.

- Lack of TTYs and policies that limit the length of TTY telephone calls (TTYs function in a way that takes longer than regular calls).

24

- Denial of qualified sign language interpreters for classification interviews, medical appointments, required classes and treatment programs.

- Missed medical appointments, pill call, or meals because these events were only announced orally.

- Denial to access to books on tape, tape players, or large print or Braille reading materials.

- Not receiving necessary devices such as eyeglasses, hearing aids, wheelchairs, walkers, and canes, necessary medical equipment such as catheters, urine bags, and prescribed orthopedic shoes, and necessary medications such as insulin and seizure medications for inmates with disabilities.

- Inmates with diabetes have also complained of not being able to test their blood sugar levels or get the proper diet prescribed by prison doctors.

- Visitors with disabilities face difficulties due to lack of accessible parking, entrances, and visitation areas.

## *CONCLUSION*

Correctional facilities have clear legal requirements that protect the civil rights of inmates and facility visitors with disabilities.

The **American Correctional Association and Commission on Accreditation for Corrections** (ACA) clearly states that discrimination on the basis of disability is prohibited, and that **inmates** must have access to an appropriately trained and qualified person(s) who has the authority to assure ADA compliance of civil rights protection. The ACA performance-based standards include procedures and practices that assure inmates with disabilities are treated fairly and have equal opportunity in all aspects of prison life.[14]

Correctional facilities have clear ADA obligations to assure that **visitors** with disabilities can gain access equal to that of nondisabled visitors, including participation in any services and programs that include visitors. Facilities must assure these visitors access through policy modification, effective communication, and physical barrier removal.

**Endnotes**

[1] Jennifer Bronson, Ph.D. et al., "Disabilities Among Prison and Jail Inmates 2011–12," December 2015, U.S. Department of Justice Office of Justice Programs Bureau of Justice Statistics Special Report NCJ 249151, www.bjs.gov/content/pub/pdf/dpji1112.pdf (Accessed June 22, 2018).

[2] E. Fuller Torrey, M.D et al., "The Treatment of Persons with Mental Illness in Prisons and Jails: A State Survey," 8 April 2014, The Treatment Advocacy Center, www.treatmentadvocacycenter.org/storage/documents/treatment-behind-bars/treatment-behind-bars.pdf (Accessed June 22, 2018).

[3] Talila A. Lewis, "#DeafInPrison Campaign Fact Sheet 1," 26 June 2014, HERD, www.behearddc.org/images/pdf/deafinprison%20fact%20sheet%20.pdf (Accessed June 26, 2018).

[4] Rachael Seevers, "Making Hard Time Harder, Programmatic Accommodations for Inmates with Disabilities Under the Americans with Disabilities Act," 22 June 2016, AVID Prison Project, www.avidprisonproject.org/Making-Hard-Time-Harder/ (Accessed June 22, 2018).

[5] Erika Eichelberger, "Punished Twice Prisons basically Ignore the Americans with Disabilities Act," 28 Dec. 2016, VICE News, www.news.vice.com/en_us/article/evayea/prisons-basically-ignore-the-americans-with-disabilities-act (Accessed June 22, 2018).

[6] Sara Novic, "Deaf Prisoners Are Trapped In Frightening Isolation," 21 June 2018, CNN Opinion, www.cnn.com/2018/06/21/opinions/aclu-georgia-deaf-abuse-lawsuit-novic/index.html (Accessed June 26, 2018).

[7] The National Council on Disability, "Breaking the School-to-Prison Pipeline for Students with Disabilities," 18 June 2015, www.ncd.gov/publications/2015/06182015 (Accessed April 7, 2019).

[8] Dalun Zhang et al., "Juvenile offenders with and without disabilities: Risks and patterns of recidivism," Feb. 2011, Learning and Individual Differences, Vol. 21, Issue 1, Pg. 12-18, Science Direct, www.sciencedirect.com/science/article/pii/S1041608010001111 (Accessed June 22, 2018).

[9] Disability Rights and Resources, "Civil Rights of Institutionalized Persons Act," www.drradvocates.org/civil-rights-of-institutionalized-persons-act (Accessed January 29, 2019).

[10] American Correctional Association and Commission on Accreditation for Corrections, "Performance-Based Standards For Adult Local Detention Facilities" 4th ed. Upper Marlboro, MD: Graphic Communications., June 2004, 103.

[11] Sara Novic, "Deaf Prisoners Are Trapped In Frightening Isolation."

[12] American Correctional Association et al., "Performance-Based Standards For Adult Local Detention Facilities," 72.

[13] U.S. Department of Justice Civil Rights Division, "Disability Rights On-Line News," Feb. 2008, Issue 23, www.ada.gov/newsltr0208.pdf, (Accessed August, 22, 2018).

---

### *Resources*

---

ADA National Network
www.adata.org

U.S. Access Board
(800) 872.2253 (voice)
(800) 993.2822 (TTY)
www.access-board.gov

U.S. Department of Justice
There are a **wide variety** of helpful ADA Title II publications at www.ada.gov
ADA examples and resources for criminal justice entities at www.ada.gov/cjta.html
*ADA Best Practices Tool Kit for State and Local Governments*
www.ada.gov/pcatoolkit/chap2toolkit.htm

The Office of Justice Programs (OJP)
http://ojp.gov/about/offices/ocr.htm

Telecommunication Relay Service – TRS
www.fcc.gov/consumers/guides/telecommunications-relay-service-trs

Website Accessibility
- *Constructing a POUR Website*
  https://webaim.org/articles/pour/

- *Web Content Accessability Guidelines (WCAG) 2.0 Checklist*
  https://webaim.org/standards/wcag/WCAG2Checklist.pdf or
  https://webaim.org/standards/wcag/checklist

- *WCAG At a Glance*
  www.w3.org/WAI/standards-guidelines/wcag/glance/

- *WCAG 2.1 New Guidelines*
  https://blog.prototypr.io/the-new-guidelines-in-wcag-2-1-explained-c26e62b196f2)

- Section 508 of the Rehabilitation Act Standards
  (applies to electronic and information technology procured by Federal agencies)
  www.access-board.gov/guidelines-and-standards.

[14] American Correctional Association et al., "Performance-Based Standards For Adult Local Detention Facilities," 72.

**Additional References**

American Correctional Association and Commission on Accreditation for Corrections. "Performance-Based Standards For Adult Local Detention Facilities," 4th ed. Upper Marlboro, MD: Graphic Communications., June 2004.

Barry C. Taylor and Rachel M. Weisberg, Equip For Equality, "Criminal Justice & the ADA," Great Lakes ADA Center Employment Legal Briefing No. 27, (September 2016).

"Correctional Facilities," 2014, ADA National Network / Mid-Atlantic ADA Center, https://adata.org/factsheet/corrections, (Accessed June 29, 2018).

Elizabeth Stanosheck Jeanette, "ADA – Audio Corrections and the ADA: Balancing the Rights of People With Disabilities While Incarcerated," 21 Sept. 2010, ADA National Network / Great Lakes ADA Center, www.accessibilityonline.org/ADA-Audio/archives/10201, (Accessed June 29, 2018).

"Examples and Resources to Support Criminal Justice Entities in Compliance with Title II of the Americans with Disabilities Act," Jan. 2017, U.S. Department of Justice Civil Rights Division, www.ada.gov/cjta.html, (Accessed June 29, 2018).

> For additional information and questions contact your Regional ADA Center at 1.800.949.4232 (V/TTY). To find your Regional ADA Center go to www.adata.org.

michael Mayo
2018112027
2700 South California
Chicago, IL 60608

Prisoner Correspondence
Clerk's Office
U.S. District Court
219 South Dearborn Street, 20th Floor
Chicago, IL 60604

04/25/2023-14

7018 3090 0000 1751 4769

NEOPOST
04/21/2023
US POSTAGE $017.30⁰
ZIP 60608
041M11297257

RECEIVED

APR 25 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Parker